GEORGE O. GILMORE et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32050.)

EARL J. KNIPPER, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32048.)

JOSEPH M. SCHANTZ et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32051.)

LAURA M. HAIGHT, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32052.)

ELMO KIRBY et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32054.)

JAMES S. GLASGOW, JR., et al., as Coexecutors of J. STEWART GLASGOW, SR., Deceased, Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32055.)

WILLIAM T. ROACH et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32056.)

ERNEST H. CAMPLING et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32057.)

OTTO MATTAUSCH et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32049.)

Court of Claims, July 12, 1955.

*Robert M. Schantz* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Douglas S. Rider of counsel)*, for defendant in all claims except Claim No. 32049.

*Jacob K. Javits, Attorney-General (Douglas S. Rider of counsel)*, for defendant in Claim No. 32049.

LAMBIASE, J. These claims have been filed to recover damages for the appropriation, pursuant to the provisions of section 676-a of the Conservation Law of the State of New York for the purposes of Lake Ontario State Parkway on the 7th day of August, 1951, of certain rights of way and easements belonging to claimants which are more particularly designated and described in proposal No. 281 in appropriation papers on that day filed and recorded in the office of the Clerk of the County of Monroe, New York, as follows:

1. That portion of the right of way or easement, connecting lands within the Summer Haven Subdivision abutting Lake Ontario in parts of Great Lots 6 and 7, Section 14, Township 5, Town of Hamlin, County of Monroe, State of New York, with North Hamlin Road to the south, which portion lies within lands of the State of New York (Lake Ontario State Parkway) as acquired from Fred T. Hutchins, et. al. by the County of Monroe by deed filed in the Monroe County Clerk's office in Liber 1730 of deeds at page 317, said right of way or easement is further described in a deed filed in the Monroe County Clerk's office in Liber 1667 of deeds at page 255, dated September 11, 1934, which states in part, " and also over the roadway now running from the North Hamlin Road across the farm of parties of the first part, connecting with Summer Haven Drive of Summer Haven Tract, until such time as the Lake Shore Boulevard is constructed and open to traffic, at which time the right of way south of the said Boulevard shall terminate."

2. The Twenty (20) foot " Farm Crossing " over lands of the State of New York (Lake Ontario State Parkway) reserved in a deed from Fred T. Hutchins to the County of Monroe and filed in the Monroe County Clerk's office in Liber 1730 of deeds at page 317 and described as follows:

Reserving unto the Grantors, their successors or assigns, a right of way and easement, not exceeding 20 feet in width through and over a portion of the premises herein conveyed, to construct, and maintain at the Grantors' own cost and expense, one " Farm Crossing " across the proposed Parkway, said crossing being intended for necessary farm purposes connecting the remaining

farm lands of said Grantors on each side of the premises herein conveyed. Said farm crossing to be located where shown on the above mentioned map.

The exact alignment, grade, construction, maintenance and operation of said crossing shall, in the interests of harmonious appearance and safety of traffic, be carried out in a manner satisfactory to the Genesee State Park Commission or succeeding public agency in charge of said parkway, but the requirements of such Commission or agency shall not be unreasonable nor shall approval be unduly withheld.

— 2 —

In the event of the discontinuance of the use of said "Farm Crossings" by the Grantors, their successors or assigns, because of a permanent change in the character or use of the Grantors' adjoining lands, then the above described right of way and easement shall terminate.

3. The thirty-two (32) foot subdivision access across the lands of the State of New York (Lake Ontario State Parkway) reserved in deed above recited in item #2, described as follows:

Reserving unto the Grantors, their successors or assigns, a right of way and easement, not exceeding 32 feet in width through and over a portion of the premises herein conveyed to construct and maintain at the Grantors' own cost and expense, a private driveway for any necessary traffic connecting the lands of the Grantors adjoining and on the north side of the premises herein conveyed with the proposed Parkway pavement, said right of way to be located where shown on the above mentioned map.

The exact alignment, grade, construction, maintenance operation of said private driveway, shall, in the interests of harmonious appearance and safety of traffic, be carried out in a manner satisfactory to the Genesee State Park Commission or succeeding public agency in charge of said Parkway, but the requirement of such Commission or agency shall not be unreasonable nor shall approval be unduly withheld.

In the event of the discontinuance of the use of the said access right of way and easement for a period of two years or more by the Grantors or their successors in interest because of said access no longer being necessary, then such right of way and easement shall terminate.

*Excepting and Reserving* from this appropriation a "right of access" from Summer Haven Subdivision to an existing paved road, said right of access to said existing paved road being at the northerly line of the 32 foot subdivision access above described, designated as Item #3 above, the center of said access to be 804.29 feet westerly of the southeast corner of said Summer Haven Subdivision, measured along the southerly line of said subdivision, said paved road extending easterly through lands of the State of New York, along lands of E. Stalker and F. Sauerbier, and through the lands of Wautoma Beach Subdivision to the Hamlin-Parma Town Line Road.

The "Farm Crossing" designated as No. 2 above and the "subdivision access" designated as No. 3 above are as shown on map prepared by the Genesee State Park Commission entitled "Acquisition Map of the Lake Shore Parkway," Series L-5, Section B, Sheet #8, dated February 5, 1935, revised June 13, 1935 and redrawn October 30, 1935 and filed in the Monroe County Clerk's office November 18, 1935. (Claim #32050, Exhibit 7).

The above-entitled claims were tried together by stipulation and for convenience. The record made in the George O. Gilmore and Evelyn A. Gilmore Claim No. 32050 was, by stipulation, made applicable to all the other claims with the right to the

court to use said record in any and in all the claims hereinabove, with the exception of damages, proof of which was separately made in each claim. We have duly viewed the premises involved in the claims.

A copy of the aforesaid description was duly served upon all the claimants by publication on August 9, 1951, pursuant to subdivision 16 of section 676-a of the Conservation Law; and the claims herein have been duly filed, have not been assigned, and have not been submitted to any other officer or tribunal for audit or determination.

On August 7, 1951, claimants were and for some time prior thereto had been the owners in fee of the various parcels of land hereinafter set forth opposite their respective names, and specifically described in the exhibit the number of which is also set out opposite their respective names, all located in '' SUMMER HAVEN A subdivision of the Fred T. Hutchins Lake Shore Frontage, situated in the North Part of Lots, 6 and 7, in the 14th. Section; Township, 5, of the Triangular Tract, Town of Hamlin, Monroe Co. N. Y.'' (Claim No. 32050, Exhibit 6.)

|  | | *Exhibit |
| Claimant | Property | No. |
| --- | --- | --- |
| George O. Gilmore and Evelyn A. Gilmore | Lot 6– 6A | 10 |
| Earl Joseph Knipper | Lot 16–16A | 3 |
| Otto Mattausch and Barbara Mattausch | Lot 10–10A | 3 |
| Joseph Merritt Schantz and Mary Frances Schantz | Lot 3– 3A | 3 |
| Laura M. Haight | Lot 11–11A | 1 |
| Elmo E. Kirby and Hilda J. Kirby | Lot 13–13A | 3 |
| J. Stewart Glasgow and Gladys A. Glasgow | Lot 7 | 3 |
| William T. Roach and Isabel M. Roach | Lot 4– 4A | 3 |
| Ernest H. Campling, Sr. and Ernest W. Campling, Jr. | Lot 17–17A | 3&4 |

The aforesaid subdivision map was caused to be filed in the Monroe County Clerk's office on February 21, 1934, by Fred T. Hutchins and Ruby Hutchins, his wife, who were the owners of a farm in the town of Hamlin, County of Monroe, New York, bounded on the north by Lake Ontario and on the south by North Hamlin Road, of which the subdivided property was a part.

On November 18, 1935, the Genesee State Park Commission caused to be filed in Monroe County Clerk's office a map entitled

---

* As numbered in each claim.

'' ACQUISITION MAP OF THE LAKE SHORE PARKWAY Prepared by GENESEE STATE PARK COMMISSION '' (Claim No. 32050, Exhibit 3), such map having been originally dated February 5, 1935, revised June 13, 1935, and redrawn October 30, 1935. The map as filed outlines the land in the Hutchins farm south of the Summer Haven subdivision which was intended to be acquired by the State of New York for Lake Ontario State Parkway purposes. Said acquisition map as filed also indicates by lines and reference the location of a proposed right-of-way easement designated as No. 3 in the appropriation and a so-called twenty-foot '' Farm Crossing '' right of way or easement designated as No. 2 in the appropriation.

On November 21, 1935, the County of Monroe purchased from said Hutchins and wife a parcel of land lying south of and contiguous to the Summer Haven subdivision and described therein as lands '' shown on the map as prepared by the Genesee State Park Commission dated February 5, 1935, revised June 13, 1935, and redrawn October 30, 1935 and filed in Monroe County Clerk's Office, November 18, 1935 and entitled ' Acquisition Map of the Lake Shore Parkway, Series L-5, Section B, Sheet #8,' '' (Claim No. 32050, Exhibit 4). This conveyance was by warranty deed dated that day and recorded in Monroe County Clerk's office in Liber 1730 of deeds at page 317 (Claim No. 32050, Exhibit 4). The Hutchins deed to the County of Monroe contains, among other reservations, four reservations of easements to the grantor over the property conveyed by Hutchins for parkway purposes:

Reserving unto the Grantors, their successors or assigns, a right of way and easement, not exceeding 20 feet in width through and over a portion of the premises herein conveyed, to construct and maintain at the Grantors' own cost and expense, one '' Farm Crossing '' across the proposed Parkway, said crossing being intended for necessary farm purposes connecting the remaining farm lands of said Grantors on each side of the premises herein conveyed. Said farm crossing to be located where shown on the above mentioned map.

The exact alignment, grade, construction, maintenance and operation of said crossing shall, in the interests of harmonious appearance and safety of traffic, be carried out in a manner satisfactory to the Genesee State Park Commission or succeeding public agency in charge of said Parkway, but the requirements of such Commission or agency shall not be unreasonable nor shall approval be unduly withheld.

In the event of the discontinuance of the use of said '' Farm Crossings '' by the Grantors, their successors or assigns, because of a permanent change in the character or use of the Grantors' adjoining lands, then the above described right of way and easement shall terminate.

Reserving unto the Grantors, their successors or assigns, a right of way and easement, not exceeding 32 feet in width through and over a portion of

the premises herein conveyed to construct and maintain at the Grantors' own cost and expense, a private driveway for any necessary traffic connecting the lands of the Grantors adjoining and on the north side of the premises herein conveyed with the proposed Parkway pavement, said right of way to be located where shown on the above mentioned map.

The exact alignment, grade, construction, maintenance operation of said private driveway, shall, in the interests of harmonious appearance and safety of traffic, be carried out in a manner satisfactory to the Genesee State Park Commission or succeeding public agency in charge of said Parkway, but the requirement of such Commission or agency shall not be unreasonable nor shall approval be unduly withheld.

In the event of the discontinuance of the use of the said access right of way and easement for a period of two years or more by the Grantors or their successors in interest because of said access no longer being necessary, then such right of way and easement shall terminate.

Reserving unto the Grantors, their successors and assigns the right to construct and maintain a four inch conduit for water across the premises herein granted, said conduit to be constructed and maintained at the Grantors' own expense and to be located under the farm crossing shown on the above referred to map, and said conduit is to be placed under the farm crossing before construction of the roadway on the premises herein granted, and placed at a depth and constructed in a manner satisfactory to the Genesee State Park Commission, or succeeding public agency in charge of said Parkway, but the requirement of such Commission or agency shall not be unreasonable nor shall approval be unduly withheld. (Claim #32050, Exhibit 4)

By warranty deed dated November 26, 1937, and recorded in Monroe County Clerk's office in liber 1863 of deeds at page 5 (Claim No. 32050, Exhibit 5), the County of Monroe sold and conveyed, with other properties, to the State of New York the land it had purchased from Hutchins and wife, and said conveyance contained the following, among other things: "This conveyance is subject to all farm crossings and rights of access reserved in the above deeds, and is also subject to the public use for highway purposes of the portion of the above described lands that are now public highways."

Claimants duly acquired title to their respective parcels of land in and to Summer Haven subdivision, which parcels have been hereinbefore set forth. The deed to the respective claimants, among other things, granted to each of them the easements and rights of way which are the subject of this appropriation and are particularly hereinabove enumerated, and a right of way or easement over a roadway running from the North Hamlin Road across the farm of Fred T. Hutchins and wife connecting with Summer Haven Drive, said right of way to continue until such time as the Lake Ontario State Parkway was constructed and open to traffic, at which time that part of the right of way south of the Lake Ontario State Parkway or boulevard was to terminate.

About the year 1949, the Genesee State Park Commission commenced construction of the Lake Ontario State Parkway on that part thereof located on the parcel of land formerly owned by Hutchins. However, the access of the Summer Haven property owners, including the claimants herein, to and across the proposed Lake Ontario State Parkway or boulevard and to and across the Hutchins farm property south of the proposed parkway and thus to the Hamlin Road, all of which had been provided for them by the foregoing easements, was not cut off until August 7, 1951, at which time there was substituted therefor and made available to them a right of access or service road from said Summer Haven subdivision to an existing paved road and thence to the Hamlin-Parma Town Line Road, the latter being part of the public highway system, which " right of access " or service road is more particularly described in the exception contained in the " Notice of Filing and Recording of Appropriation Papers and Vesting of Title." (Claim No. 32050, Exhibit No. 7.) This right of access or service road, presumably, had been constructed by the State of New York pursuant to authority contained in subdivision 2 of section 676 of the Conservation Law of the State of New York.

The parkway or boulevard had not been constructed and was not open to traffic on August 7, 1951, the date of the appropriation. Therefore, assuming that the easements appropriated were in full force and effect on that date, by the appropriation, they, and the access afforded claimants through them, were taken.

The easements appropriated by the State of New York are property (Conservation Law, § 676-a, subd. 1, par. [b]); and they are protected by the Constitution of the State of New York from being taken without just compensation. But in estimating their reasonable market value as of the date of the appropriation, it is impossible to consider them as property separate and distinct from the land to which they are appurtenant — in this instance the property of the claimants in the Summer Haven subdivision — and the right of claimants as such property owners to compensation is measured and ascertained not by the value of the easements separate and without reference to the dominant tenement to which they are attached, but by the damage which the dominant tenement sustained as a result and as the consequence of their loss. It follows that in making an award where easements are taken or interfered with to such an extent that in a legal sense they are taken, there would be no compensation for the easements taken beyond a nominal sum,

and the right of claimants to recover would rest chiefly upon proof of consequential damages; that is, the real injury, if any, suffered by the land owner in any particular case of the appropriation of property in the form of an easement lies in the effect produced upon the land to which the easement appropriated was appurtenant. Such damage is a consequential damage. (*Matter of City of New York [West 10th St.]*, 267 N. Y. 212; *Newman v. Metropolitan Elevated Ry. Co.*, 118 N. Y. 618; *Bohm v. Metropolitan Elevated Ry. Co.*, 129 N. Y. 576.)

Whatever property is directly taken and appropriated must be paid for by the State of New York at its fair market value — in the case at bar such market value being a nominal one — and from such market value no deduction may be made although the remainder of the property not taken may be largely enhanced in value as the result of the use to which the appropriated part is put. But in considering the claim of damages to the remainder of the land not taken, that is, consequential damages, we must consider the effect of the appropriation and of the use to which the appropriated easements have been put by the State of New York — viz., parkway use — upon the whole of the property comprising the dominant tenement, that is, its advantages and its disadvantages, its benefits and injuries. And the benefits resulting to a portion of a parcel not taken by reason of the appropriation and the use to which the part taken is put, may be offset only against consequential damages. (*Matter of City of New York [Consolidated Gas Co. of N. Y.]*, 190 N. Y. 350; *Matter of City of New York [Exterior St.]*, 285 N. Y. 455, 460.) When the effect of the appropriation and of the use is thus evaluated and if the net result is beneficial, there is no damage and nothing can be awarded as and for consequential damages. (*Newman v. Metropolitan Elevated Ry. Co., supra.*)

The easements or rights of way appropriated, together with the easement over the right of way on the Hutchins lands south of the parkway, did afford claimants access to and from a public highway, viz., the North Hamlin Road. However, in this connection we must consider that upon the construction of the Lake Shore Boulevard and upon its being opened to traffic, the easement over the roadway on the Hutchins farm to the south of the parkway was, pursuant to its terms, to terminate. It is fair to assume that it was expected that when the parkway was constructed and opened to traffic, claimants would then, through it, have access to a public highway. Such an assurance does not necessarily follow and for this reason. There is a distinction between the rights of the public in and to public highways and

its rights in and to a road running through a parkway which is part of the State's parkway system such as is the parkway in question, a distinction which is pointed out by the Appellate Division, Fourth Department, in the case of *Board of Supervisors of Co. of Monroe* v. *Wilkin* (260 App. Div. 366, 368), in which case, involving the instant parkway, the court says: '' This parkway is a part of the State park system, and while it will have a road for travel running through it, nevertheless it is essentially a park. The rule, laid down in *Perlmutter* v. *Greene* (259 N. Y. 327), that the ' right to have the highway kept open for * * * access as well as for travel [is] an '' easement,'' ' is not applicable to a parkway of the kind here contemplated. (*Matter of County of Westchester* [*H. R. Parkway*], 246 N. Y. 314; *Buffalo, Lackawanna & Rochester R. Co.* v. *Hoyer*, 214 id. 236.) ''

It would seem, therefore, that upon the completion of the parkway and its opening to the public for travel and the concurrent termination of the easement over the roadway on the Hutchins farm, the remaining easements affording access to the parkway or boulevard had they not been appropriated would not have been, for the reasons hereinbefore expressed, as suitable as the access afforded claimants by the substituted '' right of access '' or service road provided for and constructed in connection with the appropriation; and that, consequently, claimants were better off with the latter means of access to a public road or highway. Furthermore, upon this record we are of the opinion that claimants' access to a public road or highway was just as suitable with the substituted '' right of access '' or service road provided for and constructed in connection with the appropriation as it was under the easements of access as they existed prior to the appropriation.

In connection with the so-called twenty-foot '' farm crossing '' easement, across the parkway or boulevard right of way, it is interesting to note that the purpose thereof is stated to be the following: '' said crossing being intended for necessary farm purposes connecting the remaining farm lands of said Grantors on each side of the premises herein conveyed.'' (Claim No. 32050, Exhibit 7); and that there is incorporated therein the limitation that: '' In the event of the discontinuance of the use of said ' Farm Crossings ' by the Grantors, their successors or assigns, because of a permanent change in the character or use of the Grantors' adjoining lands, then the above described right of way and easement shall terminate.'' (Claim No. 32050, Exhibit 7.) Had the so-called '' farm crossing '' easement

terminated by reason of the provisions of the foregoing quotes prior to the conveyances to each of the claimants therein? The State does not raise that question, and the claims were tried upon the theory that all the easements were valid and subsisting as of the date of the appropriation and we have adopted that position also. Furthermore, we need not prolong this memorandum by further discussing this phase of the case in view of our determination herein.

It is contended by claimants that the substitute access road provided claimants in connection with the appropriation in place of their appropriated easements is inadequate and, therefore, they are entitled to damages. We are unable to agree with this contention. The State of New York by its substitute access road provided claimants with suitable means of ingress and egress, and it would seem that thereby it discharged its obligation to claimants. (*Egerer* v. *New York Central & Hudson Riv. R. R. Co.*, 130 N. Y. 108.) It is true that subsequent to said access road being made available to claimants there have been places on that section thereof running through what is known as Wautoma Beach where at various times water has flooded the road. However, the record indicates that the substitute access road was constructed at an elevation which was higher than that of the highest water level of Lake Ontario as recorded for many years preceding its construction, and that in the designing and in the construction of such access road those various levels were taken into consideration. The condition of flooding is of a temporary nature and has undoubtedly created inconvenience to claimants, but a finding that by reason thereof claimants were not afforded suitable means of ingress and egress following the appropriation of their easements is unwarranted.

Subsequent to the trial of the above-entitled claims, by order of this court dated March 17, 1955, and filed in the office of the clerk of the Court of Claims on March 19, 1955, the title of the claim of " J. Stewart Glasgow, Sr., and Gladys A. Glasgow, his wife, Claimants vs. The State of New York, Claim No. 32055 " was amended to read as follows: " James Stewart Glasgow, Jr., and Nelson W. List, as Co-Executors of the Last Will and Testament of J. Stewart Glasgow, Sr., Claimants — vs — State of New York, Claim No. 32055 ".

We have concluded that there has been no consequential damage to the remaining unappropriated lands of each of the claimants to which the appropriated easements were appurtenant by reason of the appropriation of the easements and of the **use** to which they have been put by the State of New York; and

we have concluded further that for the actual taking of the easements, in each of the claims herein the claimant or the claimants therein, as the case may be, are entitled only to nominal damages which we award in the sum of $1, with interest on said sum of $1 awarded in each claim from August 7, 1951 (the date of the appropriation) through February 7, 1952 (Court of Claims Act, § 19, subd. 1), and from August 5, 1953, to the date of entry of judgment herein; it appearing that all of the above-entitled claims and each of them were filed with the clerk of the Court of Claims and a copy thereof served upon the Attorney-General of the State of New York on the 5th day of August, 1953.

The foregoing constitutes our written and signed decision herein. (Civ. Prac. Act, § 440.)

Let separate judgment in each of the above-entitled claims be entered accordingly.