Russell G. Hunt, J.
This is an appropriation case wherein recovery is sought for the taking in fee of slightly under a tenth of an acre and a permanent easement for sight distance over about thirteen one-hundredths of an acre of claimants’ lands situated in the hamlet of Sloansville, town of Esperance, Schoharie County. The takings, pursuant to section 30 of the Highway Law, were for the purposes of the relocation and reconstruction of the Central Bridge-Sloansville State Highway No. 1215, also, known as New York State Boute No. 148. Title to the appropriated property vested in the State on June 17, 1952, the day on which the map and descriptions were filed in the office of the clerk of Schoharie County (Highway Law, § 30, subd. 6). The claimants were served with the notice, map and descriptions (subd. 10) on March 15 and 19, 1954, 21 months after the vesting of title in the State. The claim was filed in the office of the clerk of the court on January 14,1955, (Court of Claims Act, § 10).
Prior to the appropriations, the claimants owned two parcels of unimproved land on the south side of the Sharon-Sloansville State Highway No. 808, also, known as the Great Western Turnpike and United States Boute No. 20; the combined frontage was 125 feet. One parcel had a frontage of 100 feet on Boute No. 20 and a depth of 282 feet. The second, being on the east of the first and contiguous thereto, had a frontage of 25 feet with a depth of approximately 112 feet. The second parcel was separated from Boute No. 148, on the east, by a corner parcel. Prior to the appropriations, the elevations of the corner parcel and other lands contiguous thereto on the south, and Boute No. *638 148, were practically the same and all had a down grade to the south and away from Eoute No. 20; the same was true of claimants’ two parcels. In the relocation of the road, the claimants’ second parcel and the corner lot were taken and the new road was constructed thereon at a higher elevation than the claimants ’ remaining lands; for instance, at a point on Eoute No. 148, 111 feet south of Eoute No. 20, the new road was elevated 13 feet above the abutting lands, and at a point 280 feet south of Eoute No. 20, the elevation was 17 feet, while at the intersection of the two roads the elevations remained equal. The claimants’ lands sloped down and away from Eoute No. 20.
The permanent easement for sight distance extends over the southerly part of the first parcel. It is triangular in shape, with a base of 100 feet along Eoute No. 20, a radius of 111 feet in depth on the east side of the parcel, and a hypotenuse of 148 feet. This taking was for the purpose of removing obstructions to, and improving sight distances for highway uses, with the right in the State to enter and remove any object, thing or building on the land, but reserving to the claimants, otherwise, the right to use the land, provided such use does not interfere with the rights which the State has appropriated.
Following the appropriations, the claimants’ first parcel became a corner lot located on the west side of the new road and the south side of Eoute No. 20. This was beneficial to claimants’ remaining lands. There were, however, two nonbeneficial effects. The first was the sight distance easement. In this connection, the claimants contended that their remaining lands could not be used for gasoline station purposes. One of the experts called by them on the question of value and best available use, admitted, however, that he was the owner and operator of a modern gasoline station on the southeast corner of the intersection which was subject, also, to a triangular sight distance easement having a base of 80 feet on Eoute No. 20 and a radius of 92 feet on Eoute No. 148; the gasoline pumps and building were located back of the easement line. The easement does not take away claimants’ rights to the use of the land for light, air and access to and from their remaining lands and for other purposes consistent with the State’s taking.
A second nonbeneficial effect of the relocation of the highway was its elevation above claimants ’ lands, as described above. The elevation of the new road did not effect a change of grade; rather, this was the establishment of a new road at a place where there was no prior graded road (People ex rel. Astor v. Dickey, 157 App. Div. 794, affd. 211 N. Y. 599), and any adverse *639 effects of the elevation of the new road above claimants’ remaining lands may be taken into consideration on the question of damages. Damages so found would be consequential, that is, those ‘6 resulting from a direct taking ” (Van Aken v. State of New York, 261 N. Y. 360, 362), and from a consideration of the use to which the appropriated parcel has been put (South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301). Of course, beneficial results flowing from the improvement are to be offset against consequential damages (Gilmore v. State of New York, 208 Misc. 427).
There is no evidence that the State appropriated the claimants’ right of access to the new road, or, that the new road became a controlled access highway (Highway Law, § 3), and, it necessarily follows, that they have the right of direct access to the new road along their frontage thereon (Griefer v. County of Sullivan, 246 App. Div. 385, affd. 273 N. Y. 515), the guardrail to the contrary notwithstanding; however, the claimants at their own expense will have to construct a means of access to Route No. 148.
The lands prior to the appropriations were not used for any purpose since their purchase in 1945. One of the claimants testified that the lands were purchased with the object of erecting and operating a gasoline station, and this was the best available use prior to the appropriations in the opinion of the claimants’ experts. The latter valued the property at from $15,000 to $16,000 before the appropriations and only $500 thereafter. It is to be observed that claimants’ experts did not consider the remaining lands to have any particular value.
The State’s expert gave as his opinion that the best available use of the lands before the appropriations was for commercial purposes other than for gasoline station uses, and, that the fair and reasonable market value thereof was $4,485. The value after the appropriations, he testified, was $2,210, and, that its best use would be for commercial purposes on that part of the property not affected by the easement, but, considerable grading would have to be done to prepare the land for such uses, including gasoline station purposes. It is a fact, after the taking, that the claimants used 1,500 cubic yards of fill to level off the first parcel even with Route No. 20, and this is the area which is subject to the permanent sight easement; at the same time, the fill provided a means of access from Route No. 148, but only within the limits of the sight easement and not for the full depth of the first parcel. The depth of the fill reached over 10 feet.
*640 Before the appropriations the lands could have been used for various commercial purposes; however, to obtain depth off Route No. 20 considerable fill would have been required.
The claimants are entitled to recover the fair market value of the lands taken and any consequential damage which resulted to the remaining lands after having offset against the latter the benefits accruing from the improvements.
Upon all the evidence and after viewing the premises (Court of Claims Act, § 12, subd. 4), it is found that the best available use of the premises before the appropriations was for commercial purposes and that the fair and reasonable market value of the premises was $11,000. After taking into consideration the appropriation of the second parcel, and the imposition of the sight distance easement upon the first parcel, and, having considered the benefits of the improvement and offset the same against consequential damages, 'it is found that the market value of the remaining lands immediately after the appropriations was $4,500 and that claimants’ direct and consequential damages are $6,500; the best available use of the premises after the appropriations is for commercial purposes. The claimants are entitled to interest upon the award from June 17,1952, to September 19,1954, and from January 14,1955 to the entry of judgment herein.
The decision, containing findings of fact and conclusions of law, is filed herewith.