Richard S. Heller, J.
This is an action to recover damages for the appropriation of real property and for the appropriation of temporary easements to excavate and remove earth and other material for the improvement and development of the International Rapids Section of the St. Lawrence River pursuant to section 30 of the Highway Law as made applicable by title 1 of article 5 of the Public Authorities Law.
The real property appropriated in fee is shown as parcels 2031 and 2032 on Map No. 1244-R1 of the St. Lawrence River Project, St. Lawrence County, and reference is made to Schedule A of claim No. 34304 herein for a detailed description. The appropriation map was filed in the St. Lawrence County Clerk’s office on May 4, 1956, and personal service was effected on July 13, 1956.
On the date of the appropriation, claimant Wilmer C. Thomas was the owner of approximately 308 acres of land which had been conveyed to him by deed dated May 11,1954 and for which the claimant paid the sum of $12,000. Approximately 90% of the property was located in the Village of Waddington. Along the southerly boundary the property had a frontage on Franklin Street of about 1,320 feet. The westerly boundary of the property, running north from Franklin Street for approximately 2,580 feet to the right of way of the Norwood and St. Lawrence Railroad Company, was along Big Sucker Brook. The westerly boundary of the property continued north from the Norwood and St. Lawrence Railroad right of way to Route 37 which was a State highway running from Waddington to Massena. The northerly boundary of the property was a frontage of approximately 1,356 feet along Route 37. Approximately 73 acres of the total of 308 acres lay to the north of the railroad right of way and the remaining 235 acres lay to the south of the railroad right of way. Little Sucker Brook ran from south to north through the easterly portion of the property.
The appropriation of parcel 2031 containing approximately 63.17 acres left the claimant with approximately 10 acres lying *214 north of the ■ railroad right of way west of parcel 2031, almost separated into two five-acre plots by a rectangular extension to the southwest of parcel 2031. The 10 acres had a frontage of approximately 356 feet on Route 37. Parcel 2032 lay south of the railroad right of way and extended to the southerly boundary of claimants’ property along Big Sucker Brook and Little Sucker Brook. This left the claimant, after the appropriation, with a plot lying south of the railroad right of way containing some 80 acres with a frontage of approximately 1,082 feet on Franklin Road bounded on the west, north and east by State property. The claimant also owned a parcel containing approximately 77 acres lying south of the railroad right of way and bounded on the west by State property and on the east by property owned by other individuals. This 77-acre plot had no frontage on any public road and was not contiguous to any other property owned by the claimant.
The only improvements on the property at the time of the appropriation were a brick house and ‘1 old fashioned ’ ’ barn located on the 80-acre plot with frontage on Franklin Road which claimant owned after the appropriation. These buildings had a stipulated value at the time of the appropriation of $8,600 and no claim has been made for any consequential damage to the buildings by reason of the appropriation.
Claimant seeks damages for property appropriated in fee in the amount of $218,000 contending that prior to the appropriation he owned 308 acres with a value of $1,000 per acre with improvements having a stipulated value of $8,600 and that after the appropriation he owned 90 acres with a value of $1,000 per acre with improvements having a stipulated value of $8,600. This amount of damage is based entirely upon a contention that the highest and best use of the property was for industrial purposes. In support of this contention the claimant points to the railroad running through the property giving a substantial frontage for rail transportation, the water sources of Big Sucker Brook which always had some water in it and Little Sucker Brook which sometimes dried up during the Summer, the accessibility of the property to village water, telephone service and electric power and the proximity of the property to the pulp dock of the St. Regis Paper Company. Claimant established that the property while having no access to the St. Lawrence River was only some 35 or 40 feet away from the river.
The State on the other hand asserts that the total damage by reason of the appropriation was something less than $10,800 and that the damage should be reduced by offsetting the enhance *215 ment of the value of claimant’s remaining property as a result of the improvement against the damages suffered by loss of access to about 77 acres. The State’s testimony as to the value of the property prior to the appropriation and the amount of damage suffered by the actual appropriation is based upon a contention that the highest and best use of the land was for agricultural purposes.
Both parties purport to rely extensively upon sales which each asserts are comparable to the property involved here. The claimant points to sales for commercial and industrial use, practically all of which occurred some 18 miles to the east in and around Massena. The State on the other hand points to sales of farm property to be used for farming purposes. Many of these farms were far removed from the St. Lawrence River, from any municipalities such as the Village of Waddington and were without access to highway and rail transportation comparable to the subject property and had no possibility of utilization of municipal services.
In arriving at market value the court must consider those things which will be present in the minds of a willing buyer and a willing seller. (Sparkill Realty Corp. v. State of New York, 254 App. Div. 78, affd. 279 N. Y. 656.) Certainly a willing buyer and willing seller would have been cognizant of the adaptability and suitability of this plot for industrial development but would also have been aware of the state of the market in the immediate area in terms of industrial development.
The court finds that the value of the property prior to the appropriation of parcels 2031 and 2032 was $39,400. The actual area contained in parcels 2031 and 2032 was about 139.1 acres and claimant is entitled to damages in the amount of $13,910 for the appropriation of these two parcels. In addition the State concedes that its appropriation of these parcels rendered an additional 77.36 acres “ of no value because of being inaccessible ”. It contends that there was an enhancement in value of the property remaining to the claimant which should be set off against the damage to this 77.36 acres.
The question thus presented is whether the damage to the 77.36 acres to which claimant retained a legal title but was entirely deprived of the use thereof by deprivation of access, amounted to a direct injury or taking or was simply a consequential result of the actual appropriation of other lands. (Huffmire v. City of Brooklyn, 162 N. Y. 584; Gilmore v. State of New York, 208 Misc. 427.) The court finds that the complete deprivation of the usefulness of this land to the claimant by elimination of any means of access thereto amounted to a direct *216 injury to the property for which the claimant must be compensated. Since the damage amounted to a direct injury and not a consequential result, any enhancement to claimant’s remaining land cannot be set off against this award. Claimant is entitled to recover the sum of $7,736 for the direct injury to this 77.36 acres of land.
Subsequent to the appropriation of parcels 2031 and 2032, the claimant Wilmer C. Thomas conveyed an undivided seven-tenths interest of the property remaining after the appropriation to himself and his wife, and an undivided three-tenths interest to his brother, Harold C. Thomas. Thereafter the State appropriated a temporary easement on about 5.3 acres of land lying north of the railroad right of way and adjoining Route 37 for approximately 356 feet along its northerly boundary shown as parcel No. 2096 on Map No. 1191 of St. Lawrence River Project, St. Lawrence County and a temporary easement on about 5.45 acres adjoining the right of way of the railroad and extending northerly therefrom shown as parcel No. 2097 on Map No. 1189 of the St. Lawrence River Project, St. Lawrence County. Each of the above-described maps is attached to claim No. 34305 and reference is made thereto for a more detailed description. These maps were filed in the St. Lawrence County Clerk’s office on October 15, 1956 and personal service thereof was accomplished on October 24, 1956.
These two temporary easements were appropriated to furnish fill for highway and railroad relocations and it was stipulated that 64,598 cubic yards of sand were removed from the temporary easements. No consequential damages are claimed.
The parties apparently agree that the proper measure of damages for the appropriation of these two temporary easements for the purpose of removing sand and material for use as fill for highway and railroad relocation was the fair market value of the fill removed therefrom. The only evidence offered dealt with the fair market value of the fill. Claimants ’ witness testified that the fair market value, used as it was in close proximity to the appropriation, was 30 cents a cubic yard and the State contended that the fair market value for the removal of the fill was $100 per acre. Both of these opinions of value regard the fair market value of the fill rather than any value for the land as the appropriate measure of damage.
The claimants’ witness testified that the fair market value of the fill if not readily available on the location was 15 cents a cubic yard. The court finds that this is the proper measure of damage on the evidence in this case. The claimants may not have the benefit of an increased value because the fill happened *217 to be used at its location. What the owner lost is what he has a right to recover. (Boston Chamber of Commerce v. City of Boston, 217 U. S. 189.) What he lost in terms of fair market value was 64,598 cubic yards of sand and the use of the property while the sand was being removed which had a fair market value of 15 cents per cubic yard. Claimants are entitled to recover the sum of $9,689.70 for the appropriations set forth in claim No. 34305.
These claims have not been assigned and have not been submitted to any other officer or tribunal for audit or determination. The court has viewed the premises.
In claim No. 34304 claimant is entitled to judgment in the sum of $21,646 with interest thereon from May 4, 1956 to November 4, 1956 and from December 6, 1956 to January 27, 1958 and from November 17, 1958 to the date of entry of judgment. In claim No. 34305, the claimants are entitled to judgment in the amount of $9,689.70 with interest thereon from October 15, 1956 to January 27, 1958 and from November 17, 1958 to the date of entry of judgment.
The foregoing constitutes the written and signed decision of this court in accordance with section 440 of the Civil Practice Act.
Let separate judgments in each of the above-entitled claims be entered accordingly.