Paul O. Reuss, J.
On May 13, 1959 the State of New York appropriated a parcel of the claimants’ land 0.116 acres in area, situate in the Town of G-reenburgh, Westchester County, New York, by filing Map. No. 140, Parcel No. 174, Interstate Route Connection No. 520 Cross Westchester Expressway, Elmsford Section, F. A. I. 520-1-1; showing and describing such parcel, in the office of the County Clerk of Westchester County. We adopt the map and description of the appropriated property shown and set forth on such map and reference is hereby made thereto for such description without repetition thereof.
*726 The claim herein was filed in the office of the Cleric of the Court of Claims and a copy was served upon the Attorney-General on November 12, 1959. It has not been assigned.
Pursuant to a written agreement with the State of New Torlc, the claimants received a partial payment in the sum of $4,380.
The court has viewed the appropriated property.
Prior to the appropriation the claimants were the owners of a parcel of land 2.181 acres in area, located on the east side of Knollwood Eoad, approximately 945 feet north of the intersection of such highway and the Tarrytown-White Plains Eoad, the main east-west thoroughfare in Westchester County.
A building containing a retail store, a drafting room, an office, plus lavatory and storage in the basement thereof, as well as a four-car garage, and a lath house and storage shed were located on the premises.
At the time of the appropriation and for at least 10 years prior thereto the claimants conducted a retail nursery business on the property growing and selling nursery stock as well as retailing a variety of gardeners’ supplies.
The subject property fronted 468 feet on Knollwood Eoad and was approximately 254 feet in depth. The surrounding area was zoned for light industry, which included use for retail business purposes.
The best available use of the subject property was for light industry, a shopping center, or a retail business such as that conducted by the claimant.
We find that the premises were well suited to the business of the claimants particularly in view of the fact that there were seven cemeteries located in the Knollwood area.
The appropriated parcel consisted of a strip of land approximately 368 feet in length varying from 0 to 20 feet in depth, having an average depth of 15 feet, .116 acres or 5,052 square feet in area. The strip so taken abutted upon Knollwood Eoad. At the time of the taking, the appropriated area was being used as a parking lot and loading area. This parking space was capable of handling 18 to 20 automobiles; and it goes without saying this facility constituted an important adjunct to the claimants’ business.
The parking zone had been graded and paved with blacktop, and a drainage system installed. A meter pit serving the claimants’ water system, as well as the main water line were also located in the appropriated area.
After the appropriation, the right of way line ran within a foot of a concrete retaining wall adjacent to the claimants’ store.
*727 There is no question that in order to continue to make adequate use of their property for their nursery business, the claimants must replace the parking area. This can be accomplished by constructing a new parldng lot north of the store building in a location now used by the claimants for display of their stock. While such an arrangement will interfere to a certain extent with the claimants ’ general display arrangement and require the relocation of such display area to the east, it is the only feasible solution to the parking problem.
The operation of relocating the parking area entails the removal and relocation of a post and rail fence some 50 feet to the east, removal and replacing of the display bed and frame, the excavation of the new parking area, and the paving thereof. The claimants’ estimate of the cost of effecting these changes would be $6,950. The State’s appraiser estimated the cost of replacing the parking area at $3,500. This estimate was made in a rather cursory manner. We regard the comprehensive estimate furnished by the claimants as the more realistic one and have given consideration to it in assessing consequential damages (New York State Elec. & Gas Corp. v. Belard Props., 2 A D 2d 791; Matter of City of New York [39th St. Ferry], 143 App. Div. 515).
As is usual in this type of claim there is a great disparity in the appraisals made by the real estate experts called by contending parties, and in arriving at an award which will fairly compensate the claimants we must analyze the basis for the opinions of such experts.
The only consequential damage allowed by the State’s expert was the sum of $3,500 for replacement of the parking area. In considering consequential damages we have not overlooked the fact that the claimants have lost little or no frontage on Knollwood Road and still have the same access thereto. Rut, we have given consideration to the claimants’ experts’ testimony with regard to the functional obsolescence arising from the fact that the store is now located on the State’s right of way and the store building is mislocated.
In assessing the value of the 0.116 acres actually taken by the State the appraisal experts for both parties took into consideration the fact that the area had been graded, stoned, and prepared as a drive-in parking area. The claimant, William Foster, also gave evidence with respect to the original cost of improving his parking area.
While we recognize the fact that the rear area of the claimants ’ premises was at a higher elevation and was less desirable than the front, and agree with the claimants’ contention that the land *728 bordering the highway had a higher value than that in the rear, we have not considered the improvements located on this area since we have allowed for the replacement of such facilities in assessing consequential damages. To do otherwise would result in double payment for such improvements. In arriving at an award we have considered the value of the land without any improvements thereon.
Both appraisers submitted lists of sales of real estate they considered comparable to the subject property. The list submitted by the State contained four sales varying from 17.719 acres sold at $7,840 per acre to 0.72 acres which sold at $27,700 per acre. However, each tract was either above or below the grade of the adjoining highway or had some other access problem to overcome. The State’s expert admitted that with the exception of one tract, which required considerable work done on it since the sale, none of the properties on the list were very suitable for a retail business.
The list relied upon by the claimants’ expert contained several small lots which sold for prices varying between $1.73 to $3.65 per square foot. The larger parcels listed varied from a 0.93 plot sold at $64,500 per acre to three- and four-acre plots varying in price from $38,000 to $69,000 per acre.
We find that the listed sales relied upon by the claimants’ expert are more comparable to the subject property than the list relied upon by the State’s expert, and in arriving at our award we have considered the testimony of the experts accordingly.
The Attorney-General has asked us to find that the improvement of Knollwood Boad by the State of New York particularly benefited this property and that consequential damages, if any, must be offset by such benefits. The rule is that the court may consider benefits in appraising consequential damages, but not in considering direct damages. (Matter of City of New York [Exterior St.], 285 N. Y. 455; Gilmore v. State of New York, 208 Misc. 427.) The benefit accruing to the claimants’ remaining land should be a special and particular one; if the benefit attaches to all the land in the neighborhood without regard to their situation with reference to the improvement it is general and cannot be deducted. (Matter of City of New York, 190 N. Y. 350, 361, 362; Fuller v. City of Mount Vernon, 171 N. Y. 247; Hawley v. Village of Elmira Hgts., 163 Misc. 787.) The accrual of special benefits is a factual question. (Pauly v. State of New York, 14 Misc 2d 314.) The testimony of Mr. Keller, relied upon by the Attorney-General supports a finding that any benefit derived from the Cross Westchester Expressway and the improvement of Knollwood Boad was a benefit to the *729 community at large. There is nothing in the record to support a finding to the effect that the claimants’ property received special benefits from the improvement; therefore, we have not allowed for any benefits in considering consequential damages to the claimants’ remaining lands.
We find that the value of the claimants’ premises before the appropriation was $140,000, that the value of the premises after the appropriation was $122,500. The- claimant, as a result of the appropriation of a portion of his property by the State of New York, has been damaged in the amount of $17,500 and is entitled to an award against the State of New York in such amount, less $4,380 the amount of the partial payment received by the claimants, or $13,120, with interest thereon from May 13, 1959 to the date of entry of judgment herein.
The foregoing memorandum constitutes the decision of the court (Civ. Prac. Act, § 440), the court has passed upon the requests to find and the conclusions of law of the respective parties, submitted pursuant to section 439 of the Civil Practice Act. Such requests, which have been found by the court are incorporated herein. Some of the requests have been refused because they are inconsistent with the facts found in this memorandum, others because they are argumentative or inaccurate, or reflect testimony rather than ultimate findings, or deal with elements which are unnecessary to this decision.