Jasen, J. (dissenting).
In this eminent domain case, claimants have been awarded damages of $346,204 in consequence of the State’s appropriation of land for a highway. I do not think that the award is legally sustainable and, accordingly, dissent.
*170 In 1958, claimants purchased approximately 49 acres of land in the Town of Henrietta, near the Oity of Rochester, for development as a regional shopping center. Subsequently, they learned that the projected route of the Genesee Expressway bisected the property, thereby rendering it unsuitable for their intended purpose.[1] Thereafter, on June 1, 1967, claimants agreed to sell to Lenrich Associates the portion of the property — some 24 acres in all—lying west of the projected appropriation at a selling price of $28,000 per acre.[2] The actual taking came on June 13, 1967, when the State appropriated 11 acres of the 49-acre tract. The Court of Claims awarded direct damages for the 11 acres actually taken and consequential damages for. the remaining 14 acres on the basis of the per-acre value ($24,000), of the entire 49-acre tract at its highest and best available use as a regional shopping center. In so doing, I think it erred.
As a general rule, damages in a condemnation proceeding are to be assessed and compensation determined at the time of the taking. (Arlen of Nanuet v. State of New York, 26 N Y 2d 346, 356; 19 N. Y. Jur., Eminent Domain, § 143.) For purposes of determining compensation, the date of the taking is ordinarily the date that title vests in the condemnor unless a prior de facto taking is made out. (City of Buffalo v. Clement Co., 28 N Y 2d 241, 253-254.) Additionally, certain affirmative value-depressing acts on the part of the condemnor, although not rising to a de facto taking, may require that evidence of value prior to such acts be received in determining just compensation (“ condemnation blight ” theory). (City of Buffalo v. Clement Co., supra, at p. 254.)
Neither the de facto taking theory nor the “condemnation blight ” theory was argued below or is appropriate on these facts. There simply was no physical invasion or imposition of some direct legal restraint sufficient to make out a de facto taking in advance of actual condemnation. (City of Buffalo v. Clement *171 Co., supra, at pp. 247, 255-257.) Nor do I discern any affirmative value-depressing acts on the part of the condemnor within the meaning of the “ condemnation blight ” theory. (E.g., unreasonable delay of eminent domain action following announcement of intent to condemn or other unreasonable conduct prior to condemnation.)
Nor am I persuaded by the argument that in selling the 24-acre parcel to Lenrich prior to the taking, claimants mitigated the scope of potential consequential damages. The argument continues that claimants, thus, ought not be denied compensation computed on the basis of the highest and best use of the entire tract as a regional shopping center. I would note, however, that had claimants retained the 24-acre parcel, severance or consequential damages could have been allowed only if its value were decreased by the taking. (See, e.g., Gilmore v. State of New York, 208 Misc. 427, 435; 19 N. Y. Jur., Eminent Domain, § 141.) Here the evidence is that its value was increased, rather than decreased. Furthermore, if it were found that the 24-acre parcel did, in fact, benefit from the projected improvement, the State would be entitled to a setoff against the consequential damages to the entire residue. (Matter of City of New York [Exterior St.], 285 N. Y. 455; Dennis v. State of New York, 24 A D 2d 924; Brand v. State of New York, 46 Misc 2d 645, mod. and affd. 26 A D 2d 747, affd. 19 N Y 2d 634; see, generally, 19 N. Y. Jur., Eminent Domain, §§ 252-256; see, also, Ann., Eminent Domain: Deduction of Benefits in Determining Compensation or Damages in Proceedings Involving Opening, Widening, or Otherwise Altering Highways, 13 ALR 3d 1149, 1160, 1165, 1187.)
In sum, the method of computing damages employed in the instant case results in an award in excess of claimant’s actual loss and works an injustice on the public which ultimately must pay the award. I recognize, however, that under the existing rules of damages the threat of imminent condemnation may have a chilling effect on the alienability of property. That is to say, an individual faced with imminent condemnation depriving him of the intended use of his land may hesitate to dispose of marketable portions thereof (thereby destroying its highest and best use), lest he deprive himself of the most advantageous compensation available in condemnation. I would agree, therefore, that, in an appropriate case, an individual who, faced with *172 .imminent condemnation, disposes of part of an integral tract, may have direct and consequential damages computed on the basis of the highest and best use of the whole tract prior to disposing of a part thereof. In that event, the award for consequential damages to the remainder should be offset by the benefit, if any, accruing, by virtue of the taking, to the parcel previously sold. This more closely comports with just compensation—not only for the condemnee, but for the public as well.
Chief Judge Full and Judges Burke and Wachtler concur with Judge Jones; Judge Jasen dissents and votes to reverse in a separate opinion; Judges Breitel and Gabrielli taking no part.
Order affirmed, with costs.

. There was testimony that a minimum of 49-50 acres is required for a regional shopping center.

. The Court of Claims characterized the agreement of June 1, 1967, as a sale even though the deed passed later. At any rate, by virtue of the agreement, and on the date of the actual taking, Lenrich was-the equitable owner of the westerly 24 acres. (Matter of City of New York [Jefferson Houses—Lombardi], 306 N. Y. 278, 282.)