In the Matter of the Application of CHRISTIAN SCHEIBEL, Appellant, for a Peremptory Writ of Mandamus against JOHN P. O'BRIEN, as Corporation Counsel of the City of New York, Respondent.

New York city — Street Closing Act — does not apply to map of town which subsequently became part of city — corporation counsel under no duty to initiate proceedings to determine compensation to property owner for street closing.

The so-called Street Closing Act (L. 1895, ch. 1006), applicable only to cities having 1,250,000 inhabitants, authorized the local authorities thereof to close existing streets by filing maps with streets designated for closing omitted and further provided that if a map "heretofore made and filed by or on behalf of the local authorities of such city" showed a certain street was not to be retained then it was closed in the same manner. *Held,* that the words quoted cannot be construed so as to include maps made by the local authorities of

a town which subsequently became part of New York city, but must be confined to territory then within the *then* limits of that city; that a street in the town of New Utrecht designated for closing on a map filed by a town survey commission in 1874, which commission had power neither to open nor close streets, did not become automatically closed when the town became a part of New York city by the annexation thereto of the city of Brooklyn with which it had been previously merged; that the act of 1895 is not applicable and that the corporation counsel of New York city is under no duty to initiate proceedings to determine the compensation due to property owners · for damages.

*Matter of Scheibel*, 192 App. Div. 438, affirmed.

(Argued November 16, 1920; decided March 1, 1921.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 30, 1920, which reversed an order of Special Term granting a motion for a peremptory writ of mandamus to compel the corporation counsel ·of the city of New York to institute proceedings to determine the compensation due to the petitioner for damages to his property caused by the closing of a street, and denied said motion.

The facts, so far as material, are stated in the opinion.

*Frederick W. Hottenroth* and *Arthur D. Lyons* for appellant. The map filed by the town survey commissioners in 1874 was a permanent map or plan, and was just such a map as was contemplated by the Street Closing Act. (*Matter of Saratoga Ave.*, 226 N. Y. 128; *Reis* v. *City of New York*, 188 N. Y. 58; *Spier* v. *New Utrecht*, 121 N. Y. 420.) The Street Closing Act applies to every part of the map of any city of 1,250,000 population, and, therefore, to every section thereof, whatever its source. (*Matter of Mayor, etc.*, 157 N. Y. 409; *Barber* v. *Woolf*, 216 N. Y. 7; *Matter of N. Y. Inst.*, 121 N. Y. 234; *Matter of Wallace Ave.*, 222 N. Y. 139; *Matter of Mayor, etc.*, 166 N. Y. 495; *Stuart* v. *Palmer*, 74 N. Y. 183;

*Matter of Barclay,* 91 N. Y. 430; *Forster* v. *Scott,* 136 N. Y. 577; *Hyland* v. *Vil. of Ossining,* 127 N. Y. 291; *People ex rel. Burhans* v. *City of New York,* 198 N. Y. 439.) Stewart avenue was, until January 1, 1898, a legally open street. (*Matter of Church,* 92 N. Y. 1.) Stewart avenue in front of petitioner's property was closed when the Street Closing Act became effective in the *locus in quo.* (*Matter of Walton Ave.,* 131 App. Div. 696; 197 N. Y. 518; *Matter of Newton Ave.,* 219 N. Y. 399; *Matter of West 151st St.,* 132 App. Div. 871.)

*John M. Harrington* for Edward Hersh, *amicus curiæ.* The Street Closing Act (L. 1895, ch. 1006) is operative in the locality in which the appellant's premises are situated wherever the circumstances warrant its application; the map filed by the town survey commission of Kings county in 1874 is a permanent map or plan such as was contemplated by section 2 of that statute, providing for the discontinuance of parts of public streets included within a block bounded by streets laid out upon such permanent map or plan, upon the physical opening of one of such permanent streets; Stewart avenue has been discontinued and closed accordingly; and for the damages resulting from such closing the appellant is entitled to the remedy afforded by that act. (*People ex rel. Central Trust Co.* v. *Prendergast,* 202 N. Y. 188; *Matter of Church,* 92 N. Y. 1; *Matter of Wallace Ave.,* 222 N. Y. 139; *Matter of City of New York,* 145 App. Div. 855; 204 N. Y. 670; *Matter of City of New York,* 219 N. Y. 399; *Matter of City of New York,* 226 N. Y. 128; *Matter of City of New York,* 183 App. Div. 378; *City of Cohoes* v. *D. & H. Co.,* 134 N. Y. 397; *Matter of Mayor, etc.,* 166 N. Y. 495; *People ex rel. Winthrop* v. *Delany,* 120 App. Div. 801; 192 N. Y. 533.) Inasmuch as no provision has been made for either actual or constructive notice to property owners of the event upon which their rights under the Street Closing Act depend, there is no valid statutory limitation of

time within which the appellant may invoke the remedy prescribed by the statute for securing compensation due because of the appropriation of private and public easements appurtenant to premises owned by him. (L. 1895, ch. 1006, § 5; *Matter of City of New York* [*Newton Ave.*], 219 N. Y. 399; *Matter of City of New York* [*Grand Boulevard*], 212 N. Y. 538; *Matter of Mayor* [*Walton Ave.*], 145 App. Div. 855; 204 N. Y. 670; *Matter of Wallace Ave.*, 222 N. Y. 139.)

*James Regan Fitzgerald* for John Flanagan, *amicus curiæ.*

*John P. O'Brien Joseph A. Solovei* and *Patrick S. MacDwyer* of counsel) for respondent. The map of the town survey commissioners of Kings county is not within the purview of chapter 1006 of the Laws of 1895, and, therefore, Stewart avenue was not discontinued or closed under or by virtue of that statute. (*Reiss* v. *City of New York*, 188 N. Y. 58; *Matter of Mayor, etc.*, 166 N. Y. 495; *Matter of Mayor, etc.*, 95 App. Div. 533; 119 App. Div. 882; 189 N. Y. 551; *Matter of Mayor, etc.* [*Walton Ave.*], 131 App. Div. 696; 197 N. Y. 518; *Matter of City of New York* [*Newton Ave.*], 219 N. Y. 399; *Matter of City of New York*, 226 N. Y. 128; *Wynehamer* v. *People*, 13 N. Y. 378; *Westervelt* v. *Gregg*, 12 N. Y. 202; *Matter of Jacobs*, 98 N. Y. 98; *Forster* v. *Scott*, 136 N. Y. 577; *Stuart* v. *Palmer*, 74 N. Y. 183.)

ANDREWS, J. Chapter 670 of the Laws of 1869 created a *town survey commission* for New Utrecht and four other towns of Kings county. The commission was given power neither to open streets nor to close them. It was to act for future needs. It was to establish a uniform system of streets, to prevent the many ills that come from private and unofficial action. To this end it was to adopt a permanent plan for these towns and to file a map

conforming it as far as practicable to the plan already in force in Brooklyn. Such a plan necessarily involves not only the delineation of new streets proposed and of existing streets that may be retained, but also the designation of such streets as are inconsistent with it, and so in the opinion of the commission should be closed. In 1874 this map was filed. It showed Sixth and Seventh avenues running north and south, and across them Seventy-second and Seventy-third streets. And diagonally, through the block so bounded, Stewart avenue was also shown — but only by dotted lines, indicating a desire that ultimately it should be closed as a public street. For it has been for many years and still was such a street. It is claimed that thereafter it was abandoned as a highway — that from 1875 onward the records of the town show no expenditures for its maintenance and repair. Consequently it has " ceased to be traveled or used as a highway for six years." (Highway Law [Cons. Laws, ch. 25], sec. 234.) The record, however, without denial, is that as late as 1892 it was a main highway and much traveled. " Once a highway, always a highway " until the contrary is shown. And the contrary is not shown by the fact, if fact it be, that the town failed to keep it in a reasonably safe state. (*Horey* v. *Village of Haverstraw*, 124 N. Y. 273.)

So in this last year when the appellant acquired title to a plot of land fronting on Stewart avenue between Seventy-second and Seventy-third streets, he became an abutting owner on a public highway and under the language of his deed, which conveyed " all the right, title and interest " of his grantor in Stewart avenue, he is presumed to have acquired the fee to the center of the street. Over the whole street, as appurtenant to his land, he had at least easements of light, air and access. (*Egerer* v. *N. Y. C. & H. R. R. R. Co.*, 130 N. Y. 108; *Matter of R. T. R. R. Comrs.*, 197 N. Y. 81, 100; *Donahue* v. *Keystone Gas Co.*, 181 N. Y. 313.) These easements were property

of which he could not be deprived without compensation and by due process of law.

In 1894 New Utrecht was annexed to Brooklyn. (Laws of 1894, chap. 451.) The streets of the town became the streets of the city and "whether fixed by a map made and filed as provided by law or by other competent authority, and whether opened or unopened, shall be held· and taken to be a part of the commissioners' map of the city of Brooklyn * * * and the public streets, * * * of the town of New Utrecht, as so fixed and located, shall become and be deemed to be the streets * * * of Brooklyn, with the same effect as if they had been originally laid down on said commissioners' map." (Section 10.) Clearly the intent was to adopt the map of 1874 as one of the Brooklyn maps, with the same force as if it had originally been made by the Brooklyn authorities.

A year later the so-called Street Closing Act (Laws of 1895, chap. 1006) was passed. Its main purpose was to affect the city of New York. But it was general in its terms, and while New York was at that time the only city of 1,250,000 inhabitants, it applied equally to all cities which might thereafter reach that limit. It empowered the local authorities "in the manner hereinafter provided" to close existing streets. They are to designate on a map only the streets which they may determine to lay out as permanent streets, "omitting therefrom all such former streets, * * * which they may determine to discontinue or close." (Section 2.) On filing the map the streets shown on it shall be the only lawful streets, and any former street, not shown thereon and not then open and in public use, shall cease to be a street and may be used by the owners of the fee. If when the permanent map is filed the street to be closed is actually open and used, if it is included within the plot bounded by the streets laid out on the permanent map, then when one of such boundary streets is opened, it shall cease for all

purposes to be a street and the owner of the fee may occupy it. A limitation of six years to the right to compensation was imposed on those injured by the closing. So far the act provided for the future. The past was not neglected. If a map " heretofore made and filed by or on behalf of the local authorities of such city " as part of its permanent system of streets showed a certain street was not to be retained then it was closed in the same manner as if it had appeared to be closed upon a future map. Only here, the limitation was not six years, but two, from the date of the statute.

The purpose of this part of the act was to adopt and ratify prior action of the city authorities in filing maps showing the closure of unnecessary streets. There is no reason why the legislature might not do so. Provision was made to compensate those whose property was taken or damaged, and if the limitation as to time may not stand (*Matter of City of New York,* 212 N. Y. 538), that limitation may be ignored without affecting the general validity of the statute. (*Matter of City of New York, Newton Ave.,* 219 N. Y. 399.) But obviously in 1895 this act did not apply to Brooklyn. On January 1, 1898, however, Brooklyn became part of the city of New York. The map of that part of Brooklyn for which a permanent street plan has been adopted by the proper municipal authorities became the plan of the greater city. (*Reis* v. *City of New York,* 188 N. Y. 58.)

On January 1, 1898, therefore, the situation was this. Stewart avenue was a public highway of New York. On the permanent plan of 1874 the intention to close it had been shown. The portion with which we are dealing was included in a plot bounded by Sixth and Seventh avenues and Seventy-second and Seventy-third streets. But Seventh avenue had been physically opened in 1892. If, therefore, the 1874 map was one of the maps referred to in the Street Closing Act on the instant the former territory of Brooklyn became part of New York, Stewart

avenue was legally closed. (*Matter of City of New York, Newton Ave.*, 219 N. Y. 399.) Whether the act does apply to such a situation is the primary question involved in this appeal.

The legislature speaks of maps heretofore made by the local authorities of cities then and thereafter having 1,250,000 inhabitants. Doubtless, if such seemed to be its intention, these words might be so construed as to include maps made by the local authorities of a town which subsequently became part of such a city. If, however, such a construction would produce impracticable or unreasonable results we should be slow to extend the literal language of the statute. Such is the situation with which we deal. Not closed until 1898, the remedies of the property owners were cut off by the limitation in 1897. If Seventh avenue had not been opened until 1902 the situation would have been even more strange. Assume the intent to close Stewart avenue first appeared on a Brooklyn map in 1897. It would neither be a map of a city of the required population filed after the adoption of the statute nor a map " heretofore made "— made before 1895. To say that the limitation is unconstitutional is no sufficient answer. Even an unconstitutional provision may supply evidence of intention. To limit claims for damages to two years from the passage of the act, and yet to extend the statutory reference as to past maps to new territory, annexed years afterward, cannot have been the purpose. A later reference in the statute, also, gives an indication of what was in mind. Where before the passage of the act a map has been filed " discontinuing or closing, or intending to discontinue or close a street " and proceedings for compensation have not been taken, proceedings shall be instituted for that purpose within two years thereafter. (Sec. 5.) The procedure as to future maps had already been indicated. In but these two cases is provision for compensation made. If Stewart avenue is closed then there can be

no compensation under chapter 1006. For as we have seen the map of 1874 was a mere plan to be worked out later. By itself it neither closed any street nor did it indicate the intention of a body having the power to act to close streets in the future.

We conclude, therefore, that Stewart avenue was not automatically closed on January 1, 1898. To hold otherwise would be to render the whole scheme of the Closing Act impracticable. From the very necessities of the case the reference to maps " heretofore made " must be confined to territory then within the *then* limits of New York. The act of 1895 is not applicable and the corporation counsel was under no duty to initiate proceedings thereunder. Consequently the order of the Appellate Division should be affirmed, with costs in this court.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND and CRANE, JJ., concur.

Order affirmed.