BERNARD Ryan, P. J.
Claimant corporation is tlie owner and operator of several canning plants in western New York including one located at the hamlet of Egypt which fronts on State Highway Route 31 abutting it on the southerly side thereof. *521 Pursuant to section 30 of the Highway Law, the State of New York appropriated three parcels described respectively as Map 88, Parcel 98, Map 93, Parcel 105 and Map 113, Parcel 104. Map 88, Parcel 98 was isolated from the other two parcels appropriated and was carved out of a tract of farm land used for storage purposes and held for possible future expansion of ■claimant’s facilities. For this parcel claimant asks an award ■of $100 which is a somewhat larger amount than the AttorneyHeneral thinks the parcel is worth, but which we deem fair and xeasonable.
The contention herein arises from the appropriation of the other two parcels which are contiguous and which together comprise an irregular quadrangle for the width of eight feet <on the eastern line, 335.76 on the northerly line, 281.06 feet on the southerly line and 45.71 feet in a diagonal on the westerly line, the strip being eight feet wide at its widest point. These two parcels were taken off the front of the claimant’s canning factory property. Prior to the appropriation, the strip of land was enhanced by several maple trees, four of which were of 10 inches in diameter and were in good condition. These were removed during the course of construction. For them the claimant asks the sum of $2,200 as a reasonable market value. The measure of damages is not the separate value of the trees hut the value of the land as enhanced by them. (29 C. J. S., Eminent Domain, § 173; 2 Lewis, Eminent Domain [3d ed.], § 724; Matter of Bensel [Ashokan Reservoir, Section No. 13], 158 App. Div. 41 [1913], affd. 210 N. Y. 623; Ribak v. State of New York, 38 N. Y. S. 2d 869 [1942].)
Subsequently to the appropriation of claimant’s land, the paved portion of Route 31 was increased from 18 to 24 feet, six feet being added on the southerly side of the existing pavement. An additional four feet of shoulder was stabilized with Item 64 asphalt. An additional three feet of shoulder was stabilized but was not surface treated with asphalt. However, this reconstruction to a total width of 13 feet, while widening the pavement and providing a stabilized shoulder, was encompassed entirely within the highway right-of-way line which .■existed prior to the appropriation. No part of the eight-foot width appropriated by Parcels 104 and 105 was utilized for this purpose. It is true, as contended by claimant, that the highway right of way line is now adjacent to the north end of • claimant’s platform scales. It is true that the six feet of pavement plus the four feet of bituminous macadam bring the edge .of the hard surface of the road 10 feet nearer to the wall of *522 claimant’s most northerly building. There can be little doubt that the hazards to ingress and egress of auto trucks and tractor trailers have been greatly increased by the widening of the highway. This is an element of consequential damages. However, we do not discern injury to claimant’s property to the extent urged by counsel. The issues resolve themselves as follows: Claimant contends that in assessing damages, this court should take into account not only the the present use which the State has made of the appropriated strip but any future use to which it may be put under the terms of the appropriation. Claimant’s counsel foresees that the State of New York may use the area appropriated to block access to claimant’s property completely by building an embankment of considerable height on the strip. He foresees a physical situation similar to that described in Spinner v. State of New York (4 A D 2d 987 [1957]). But in that case the appropriation was of an easement (p. 988) “‘for the purpose of constructing, reconstructing, and maintaining thereon embankments and/or excavations. ’ ” In reversing the decision in this court, the Appellate Division, Third Department held that the damages here awarded were inadequate unless the State should modify and limit its right under the easement; that otherwise “the damage must be evaluated on the basis of what the State has the right to do-under the terms of the easement as appropriated ” (p. 988).
Claimant’s counsel finds further support for his argument in Morton v. State of New York (8 Misc 2d 369 [1957], affd. 8 A D 2d 49). But in that case this court found, and the Appellate Division upheld the finding, that because of the permanent easement, the right of access was denied claimants. Similarly to the Spinner case (supra), in Morton a permanent easement was taken “‘for the purpose of constructing, reconstructing and maintaining thereon, excavations and slopes’” (8 Misc 2d 369, 371). Judge Heller, of this court, included in his award an amount for loss of access. Mr. Justice Reyüstolds, writing for affirmance, said that it would seem that the Mortons found themselves in the same situation as the Spinners, perhaps some day facing a high embankment which could completely block access to their property. Here the situation is quite different. What the State has appropriated here is not an easement, upon which it can at any time enter and dig or build, erect or tear down, maintain or alter at will. Instead it has taken the fee and thus widened its highway right of way just as it did in Stevens v. State of New York (190 Misc. 727 [1947]). The fact *523 that this claimant’s deeds gave it title to the center of the highway and that now the State owns in fee an eight-foot strip lying between the old right of way line and the new does not deny claimant access to the highway. Mrs. Stevens, too, owned to the center of the highway in front of her farm home. In her case, as in this one, the taking was “ ‘ for purposes connected with the highway system,’ ” (p. 730) as recited in the notices of appropriation. The rule to be applied here is that stated by Mr. Justice BergaN who concurred in the decision in the Morton case (supra, p. 55) only “ because of the concession of the State in this court that the award and judgment are not excessive even if the item of loss of access be eliminated,” (italics supplied) but who disagreed with the majority on the fact of loss of access. He wrote as follows (p. 55): “ It is a fundamental rule of law, recognized for many years in this State, that the adjacent land owner has a clear legal right of access to a highway.” He thereupon cited- Griefer v. County of Sullivan (246 App. Div. 385 [1936], affd. 273 N. Y. 515).
The case of Cities Service Oil Co. v. City of New York (5 N Y 2d 110 [1958]), to which counsel also calls our attention, merely affirms the right of an abutting owner to compensation if access to and from his property from a public street is barred by a municipality.
We have already recited the physical changes which the State has made in front of claimant’s property and stated that no part of the eight-foot strip was utilized for the highway widening. Actually, it was used for underground drainage pipes. The work has been completed. Access remains substantially as it was before construction with little appreciable change of grade, if any. Counsel foresees a future situation similar to that which confronted the fee owner in Raymond v. State of New York (4 A D 2d 62 [1956], affd. 4 A D 2d 961). He fears that at some time the State of New York will change the grade of Route 31 in front of claimant’s property and that, in the absence of statutory authority, there will be no remedy available to claimant. But we cannot speculate on what the State may do in the future and assess damages on the basis of our imaginings. The test is the use to which the parcel taken is put. (South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301 [1903]; County of Erie v. Fridenberg, 221 N. Y. 389 [1917].) For this the claimant is entitled to recover, in addition to the value of the parcel proper, the damages to its remaining property consequent upon the taking. (Smith v. State of New York, 281 App. Div. 1064 [1953].) For such consequential damages *524 claimant demands $71,000 based on the opinion of a real estate broker and appraiser of the costs of cutting eight feet from the front of each of four of claimant’s factory buildings and replacing the cubical content thus sacrificed elsewhere and, in addition, the cost of moving the office building and scales. Counsel urges that only in this way can this claimant be ‘‘ put back in the same position it was prior to the appropriation. ’ ’
We are unable to adopt this theory of the measure of damages. We do, however, give consideration to the fact the claimant has lost valuable frontage, that access to its plant has been made less convenient and more hazardous, that its operations have been impeded. These factors undoubtedly affect the market value of claimant’s factory adversely. Yet claimant, since the appropriation, has continued to operate its existing facilities in substantially the same manner as it did prior thereto.
During the course of construction a manhole which was part of claimant’s drainage system was removed. This was not replaced. Its absence has caused some difficulties in plant operation. As against claimant’s demand for $71,000, the Attorney-General asks us to find that the only consequential damage sustained by claimant is the loss of this manhole which he asserts can be replaced at a cost of $500 as testified to by a defense witness. The claimant offered no proofs on replacement cost of the manhole. Instead its plant manager testified to the complications resulting from its nonexistence. Claimant uses large quantities of water in its processing of fruits and vegetables and waste materials are carried into the drainage system. At times an accumulation of such waste materials causes a' stoppage in the pipes. The loss of the manhole complicates the relief of such a condition when it occurs. Prompt relief is necessary to avoid suspension of work in the canning factory and the deterioration and loss of raw materials in process. The manager has assigned an auto truck at a rental value of $3.50 per hour and a driver at $1.25 per hour, daily during the canning season, to collect and haul away waste materials. Previously such materials were trapped in the drainage system and the manhole was utilized for access to the pipes where the stoppages were released by the use of implements called “ snakes.” But this is not a claim filed as for a continuing trespass. The measure of damages is not the recurring expense involved in keeping the drain pipes clean. It is, rather, the degree by which the existence of the manhole enhanced the value of the strip of land within which it rested and which *525 was acquired by the State. As the only testimony on value is the replacement cost at $500, we are limited to a finding that by such sum the value of the said parcel was increased.
The assessment of damages confronts us with a difficulty often encountered in appropriation claims in this court. The claimant proceeds on one theory which leads to a high figure. It offers no alternative, no other approach to the difference in value of the entire property before and after the taking. The Attorney-General relies on the opinion of an expert witness that the only consequential damage is the loss of the manhole. With respect to the actual value of the two Parcels 104 and 105 the discrepancy is not so great, the claimant’s witness giving a value of $959 plus $2,200 for the trees and the defendant’s witness $500 with no additional amount for the trees. We find the value of these two parcels as enhanced by the trees and by the manhole to be $3,500. For the depreciation in the market value of the entire property as between a willing buyer and a willing seller — it having been noted that the factory is in full force and operation in substantially the same manner as formerly and the manner of its operation having been observed recently by the court at the height of the bean packing season — we award an additional $2,500. Interest is to be added in accordance with statute. Bequests to find have been marked and a formal decision accompanies this opinion.
Judgment is directed accordingly.