Fred A. Young, J.
On April 23, 1957 the State of New York appropriated three parcels from certain lands owned by the claimants in the City and County of Oswego, New York. The parcels were appropriated for the reconstruction of State Route No. 57, otherwise known as the East River Road, an arterial highway connecting the City of Oswego with the City of Syracuse to the south. The total taking comprised of some 7.126 acres from a tract of approximately 242 acres which was being used by the claimants as a gentleman’s estate and farm at the time of the appropriation.
Parcel No. 8, a long rectangular piece of land lying between the East River Road, Route 57, and the Oswego River, comprised some 4.350 acres. The side abutting the road was some 2,562 feet long. The width of the parcel varied from a miuimum of 20 feet to a maximum of 95 feet. Of the portion of the tract abutting upon the river, some 1,645 feet fronted on the blue line of the New York Barge Canal System, and 649 feet of the parcel fronted upon the river. The 264 feet on the west side of the parcel abutted on a portion of the claimants’ property which the State originally proposed to take but omitted from the taking at the request of the claimants, so as to preserve 264 feet of river front land and certain riparian rights for the claimants’ use.
Parcel No. 8 sloped steeply and precipitously from the road westward to the river. It was unimproved and covered with trees and brush, and was hardly a suitable site for building.
Parcel No. 9 comprised an area containing 1.687 acres, located directly east of Parcel 8 and Route 57. It was approximately 2,345 feet long and varied in width from a minimum of 10 feet to a maximum of 80 feet. The area was partly wooded with first and second growth trees as well as brush and was unimproved except for several billboards, three dirt highways and *376 three fieldstone monuments, as well as a four-strand barbed wire fence, approximately 2,970 feet long.
Parcel 12 was a rectangular piece of land lying east of Route 57 some 679 feet in length on the side abutting the highway, 74 feet in width on its northerly end, 65 feet on the southerly end and 709 feet long where it abutted the claimants’ remaining lands. This area was unimproved except for several billboards. It had been wooded but some of the trees and brush had been removed by a bulldozer in 1952 or 1953.
The claimants’ lands to the east of the road sloped upward to a hill upon which a building was located. Some 48 to 50 acres of the area were being cultivated. Of the remainder, some acreage was in pasture and the balance in woods and brush. About 45 or 50 head of cattle were maintained on the premises. There were several buildings on the property including a barn, an old residence which was being dismantled during the road construction, and a new house which the claimants were in the process of constructing at the time of the appropriation. None of the buildings have been affected by the taking.
There was bus service on Route 57, the area had city water and electricity, and was close to two schools in Oswego. A city sewer line ran as far as a high school nearby, but did not extend to the claimants’ premises, and a gas line was located on the property. The area between the river and the road on the west was zoned B-Residential, and from the road to the east for 400 feet it was zoned B-Residential, the remaining lands being unzoned.
In the course of reconstructing Route 57, a new concrete highway, 24 feet in width, was built with stabilized gravel shoulders 5 feet wide. The elevation of the road was changed somewhat in three different areas. In the southern end it was raised approximately two and a half feet for a distance of 600 or 700 feet. Then, there was a small cut, a slight rise of one or one and a half feet, a cut of two and a half feet in front of the Lero property which intervened between Parcels 8 and 12, and then a major fill a maximum of five feet at the northern end. In some places, cuts and fills were made in excess of these figures but they involved only small areas. The cuts and fills were necessarily made to level out the elevation of the highway. The trees and brush growing on the appropriated parcels were removed.
In the course of the work, the State removed an existing 16-inch culvert running from the east to the west side of the road adjacent to Station 481 and replaced another 16-inch culvert at Station 478 with a new 24-inch culvert which discharges addi *377 tional drainage upon the claimants ’ remaining parcel west of the highway.
As damages resulting from the appropriation, the claimants seek the following:
Land value, Parcel No. 8.......................... $27,000
Land value, Parcel No. 9.......................... 22,000
Land value, Parcel No. 12......................... 23,600
Consequential damages to remainder resulting from loss of ornamental shade trees, change of elevation, change of grade, necessity of replotting the property and increased flow of surface water 42,000
Loss of the wire fence............................ 1,340
Three fieldstone markers.......................... 745
Loss of three driveways.......................... 1,950
For a total of........................... $118,635
Included in the $42,000 is an item for the loss of ornamental shade trees, a total of 1,337 caliper inches at $25 per caliper inch, $33,425.
The claimants’ experts testified to these amounts. On the other hand, the State produced an expert who testified that all of the damages sustained by the claimants as a result of the appropriation amounted to $9,000.
Claimants base their damages on the theory that at the time of the appropriation the best available use of the land was for subdivision purposes. To support this theory, they rely on the fact that in 1927 a former owner of the premises had a subdivision map prepared which covered an area abutting the east side of Route No. 57. This map was subsequently filed in the County Clerk’s office. Thereafter there was no further action taken until immediately prior to the preliminary survey of the road area by the State in 1954. At this time, the claimants employed one Leon King to make a survey of their lands. In 1952 or 1953, the claimants had a part of their property adjacent to the highway cleared to a depth of 100 feet. This included Parcel No. 12. On the other hand, since the acquisition of that part of their land containing Parcel No. 12, through a tax deed in 1947, the claimants made no effort to clear certain title defects, although during this time the local real estate market enjoyed its best years in some time. We also take note of the fact that between 1945 and the date of the appropriation there was little increase in population in the City of Oswego, and we are convinced that any need for residential building lots in the City of *378 Oswego and the nearby area was adequately satisfied at the time of the appropriation. Furthermore, the claimants’ experts admitted that no property in the area sold at the price they placed upon the claimants’ lands. The sale of the claimants’ lands abutting Route No. 57 as building lots may be economically feasible at some future time, but it was not in April, 1957. We cannot speculate; the rights of the parties are fixed as of the date of the appropriation. (Jackson v. State of New York, 213 N. Y. 34; Matter of Board of Water Supply, 277 N. Y. 452.)
At the time of the appropriation, the claimants were in the process of demolishing an old residence and reconstructing a new one for their own occupancy. They were also operating the premises as a farm. We conclude that at the time of the appropriation the best available use of the claimants ’ lands was as a gentleman’s estate and farm.
In considering the loss of the trees on the premises appropriated and the measure of damages thereof, it should be noted that the claimants were not in the nursery business and there is nothing to show they ever sold a single tree. Any trees on the land appropriated must be. valued together with such land and considered to the extent to which they enhance it. (Matter of Goodrich v. Village of Otsego, 216 N. Y. 112; Ribak v. State of New York, 38 N. Y. S. 2d 869; Comstock Foods v. State of New York, 18 Misc 2d 519.) The trees and brush growing on the appropriated parcels consisted of the several varieties of the trees usually found in the area. They were not particularly ornamental. We have considered such trees to the extent that they enhance the value of the land.
Claimants seek damages based on the increased flowage or drainage from the new culvert upon their property. The said damages are based on the continuing enlargement of an existing ravine located on the claimants’ remaining lands east of the road. The claimant, Richard Mitchell, testified that the ravine is rapidly getting larger where he was getting a greater flow of water from the reconstructed culvert at Station 478±. Furthermore, there is nothing to show the situation is permanent and incapable of correction. (Dietzel v. City of New York, 218 N. Y. 270.) This constitutes a continuing trespass to which consideration cannot be given in assessing damages for the appropriation of land. (La Rose v. State of New York, 199 Misc. 317; West v. State of New York, 205 Misc. 492.) Actions for continuing trespass come under the 90-day Statute of Limitations. (La Rose v. State of New York, supra.)
*379 A 4-strand barbed-wire fence with posts 12 feet apart some 2,970 feet long had been erected by the claimants within the area appropriated. The claimants removed this fence at the time of the State’s appropriation of the land. As compensation for the removal and reconstruction of the fence the claimants seek $1,340. The State’s expert witness estimated it would cost $1,200 to re-erect a new fence. He made no allowance for the removal of the old one. The claimants are not entitled to the value of the old fence as a fixture on the property appropriated, nor are they entitled to removal costs. By electing to treat it as personal property and removing it, claimants are estopped from asserting that the fence was a fixture. (Matter of City of New York [Triborough Bridge], 159 Misc. 617, 633, affd. 257 App. Div. 940, motion for leave to appeal denied 282 N. Y. 808.) Claimants are not entitled to removal costs of personal property. (Matter of City of New York [Allen St.], 256 N. Y. 236, 241; Matter of City of New York [Cross-Bronx Expressway], 195 Misc. 842, 853; Keller v. State of New York, 7 Misc 2d 925.) However, a new fence is necessary to restrain the cattle in order that the claimants may make reasonable use of their remaining lands as a farm, and the cost thereof is considered in assessing damages to the remainder. (New York State Elec. & Gas Corp. v. Belard Properties, 2 A D 2d 791; Greenhaus v. State of New York, 4 A D 2d 971.)
The three fieldstone markers, located on Parcel 9, destroyed during the reconstruction of the road are considered part of realty appropriated and valued as such.
Six billboards located on Parcel 9 were also removed. The record is devoid of any evidence as to who removed them or what their value was. The only evidence given is the loss of $105 annual rental for the right to maintain the signs. There is nothing to show that they cannot be re-erected on the claimants’ land adjacent to the road, or to show that there is a permanent loss of the rental value. Therefore, the billboards cannot be considered in evaluating damages.
Claimants also contend that as a result of the appropriation they lost the use of four driveways located on the west side of the road. Only one of those driveways was replaced by the State. There is some question as to whether there were 3 or 4 such driveways. The appropriation map, Ex. 35, shows one drive and two dirt roads entering the claimants ’ premises. The fourth seems to have been a smaller unused driveway of little or no sequence located on Parcel 12. The State engineer testified to the existence of only three. The claimant, Richard Mitchell, *380 apparently accepted this figure. The claimants’ main driveway was replaced in a new location. As damages, the claimants demand $1,950 for additional ditching and filling of the main driveway and the placing of fill to bring the other driveways up to the grade of the new road.
In addition to the reconstruction of the main drive, a new driveway was also constructed by the State giving the claimants access to their land west of the highway. The cost of restoring the two driveways entering the highway from Parcel 9 are considered in determining consequential damages arising out of the change of grade of the road. (Matter of County of Delaware v. Wakeman, 168 Misc. 644.) However, the benefits accruing to the claimants’ land from the new driveways constructed by the State as well as the improvement of the claimants’ access in certain areas resulting from the changes of grade are also considered and the value of such benefits have been offset against the consequential damages. (Gilmore v. State of New York, 208 Misc. 427.)
Certain requests to find submitted by the claimants, dealing with factors allegedly considered by their experts and not by the State real estate expert are 11 Refused ” or ‘ ‘ Refused Except as Found ’ ’, because they are inaccurate, misleading, or argumentative in form and deal with elements which bear on weight to be given the witness’ testimony rather than essential facts established by the evidence (Civ. Prac. Act, § 439).
There is a great divergence in the views of the experts with respect to the damages sustained by the claimants as a result of the appropriation. The claimants’ experts value the land as a real estate subdivision, the State’s as a farm and gentleman’s estate. ‘ ‘ One whose land is taken by eminent domain is entitled to receive its greatest value for any available use to which it may be put. As bearing on such value, it is competent to show any fact which the owner would naturally and properly bring to the attention of a buyer with whom he was negotiating a sale. # # # Qare must be taken, however, not to substitute for realty the mere hope of the owner that the property might be used for some specific purpose.” (Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583, 586.) The approach of the State’s expert witness is the more realistic one. The taking has not seriously impaired the value of the claimants ’ remaining premises. The best available use for such premises at the time of the taking was for a farm and gentleman’s estate.
An award is made in an accompanying decision.