Ronald E. Coleman, J.
At the time of the appropriation herein, claimant owned 433.3± acres of land located in the Town of Liberty, Sullivan County, New York. The property was located both on the easterly and westerly sides of old Route 17. On the property there was constructed a hotel with all the *216 facilities necessary for the operation of resort hotel business. While the property was owned by the claimant, the resort business was operated by the S. and H. Bealty, Inc., under a lease from the claimant. The S. and H. Bealty, Inc., executed a release and thereby assigned any claim it had to the claimant and it was agreed that the award herein was to be made to the claimant for any and all damages sustained as a result of the appropriation.
The claims were tried together and the court adopts the description of the appropriated property shown and set forth on the maps filed in the Sullivan County Clerk’s office and reference is hereby made thereto for such descriptions without repetition thereof.
The State by the. appropriation took for the construction of ■ new Boute 17 and access roads thereto, 22.122± acres of claimant’s land in fee, in fee. without the right of access and in permanent easements, leaving 411.178± acres remaining to the claimant. In doing so, the State took in fee without the right of access 890± feet of claimant’s frontage on the easterly side of old Boute 17. It also appropriated one house known as the “ Cold House ” and no other buildings were taken. Prior to the appropriation, the claimant had caused to have prepared subdivision maps covering two parcels of its property adjacent to the Neversink Boad and the easterly side of old Boute 17 and the State appropriated a number of lots as so shown thereon. Prior to the appropriation, the claimant had available a route by which the guests could walk to Liberty and as a result of the appropriation this was taken.
By Map No. 48, Parcel No. 160, the State appropriated claimant’s property shown thereon in fee without the right of access, reserving, however, to the claimant, the right to construct and maintain thereon a sewer line and the cost of constructing the new sewer line has been used as a guide in determining the before and after value of claimant’s property and the consequential damages to the remainder. (New York State Elec. & Gas Corp. v. Belard Props., 2 A D 2d 791.)
By Map No. 227, Parcels Nos. 434 and 440 and Map No. 228, Parcels Nos. 439, 441 and 442, the State appropriated a permanent easement in claimant’s property as shown thereon for constructing, reconstructing and maintaining a stream channel and appurtenances to the Middle Monga up Biver with the following reservation: “ Beserving, however, to the owner of the property, the right and privilege of using this property providing the exercise of such right and privilege does not, in the opinion of the Superintendent of Public Works, or other author *217 ized representative acting for the People of the State of New York, or its assigns, interfere with or prevent the user and exercise of the rights hereinbefore described.” The purpose of said appropriation as stated on the-maps, was the constructing, reconstructing and maintaining said stream channel and the rights of the State in these lands are limited to that use. Taking into consideration the use as so limited and the right reserved to the claimant to use the land taken by the permanent easements, we find that the claimant has the right thereunder after the appropriation to use the waters of the Middle Mongaup River for the operation of its snow-making equipment in connection with its ski operation and for any other purpose. (Cf. Spinner v. State of New York, 4 A D 2d 987.) However, we did consider the fact that the manner in which the claimant may use these waters is subject to the rights of the State under the appropriation, but reject the claim made that claimant may be barred entirely from making use of the same.
Claimant had remaining after the appropriation a suitable access to its hotel property by means of its old entrance. (Holmes v. State of New York, 279 App. Div. 489.) Claimant elected to and did construct a new entrance to take advantage of the now intersection of Route 52 and the access road to new Route 17 and here sought to charge the State with the cost of the same, together with claimed damages resulting from a reduction in parking area occasioned by its construction. Claimant was motivated in doing so by the fact that it considered that the old entrance would be inconvenient for its guests to use and apparently for aesthetic reasons as the new entrance as so located and the hotel itself can be seen for some considerable distance by those approaching it especially from the south and New York City. Mere inconvenience occasioned by the circuity of traffic and such aesthetic considerations are not compensable and we reject the claim made for the same. (McHale v. State of New York, 278 App. Div. 886, affd. 304 N. Y. 674; Holmes v. State of New York, supra.)
Claimant had commenced the construction of a swimming pool at the old entrance which when completed was to have cost $400,000. While claimant claimed the costs to date of the appropriation herein for the construction of this pool, we find that the same was discontinued by the claimant for reasons of change in the entrance to its property and the desirability of attaching the same to the main hotel building, and is not a compensable item.
By Map No. 46, Parcels Nos. 158 and 168, the State appropriated in fee land owned by the claimant on the easterly side *218 of old Route 17 and Route 52 and claimant’s remaining’ land adjacent thereto is elevated above the highways. The land was taken for the purpose-of making improvements to-the highways which--have been completed and there still remains, as before the appropriation, a slope from the highways to the claimant’s remaining land. Claimant contended that in the event the State excavated to the limits of the right of way as it would have a right to do on the land appropriated, claimant would have to construct a retaining wall so that its adjoining land would not fall onto the highway and herein claimed the cost of such a wall, apparently basing such claim on the theory of some future removal of lateral support to its remaining land. There was no proof that the State ever intended to excavate to the limits of its right of way, and in the absence of any proof that this already has been done, the State cannot be held liable for damages in this claim. Any such claim will accrue when the lateral support is removed by the State. On all the evidence, we cannot speculate on what the State may do in the future and assess damages on the basis of our imagining. In this claim, the test is the use to which these parcels have been put and we reject the claim made for damages based on the construction of a retaining wall. Indeed, it was testified that as a practical matter should the State excavate to the limits of the highway right of way, the State would have to construct such a wall to protect its own improvement. (Comstock Foods v. State of New York, 18 Misc 2d 519, affd. 11 A D 2d 753.)
While the State contended that the claimant’s property had been benefited by the improvement, on the evidence, we are unable to place any value on the claimed benefits from the improvement to this property and we have not allowed for any such benefits in our determination of the consequential damages sustained by claimant’s remaining land. (Pauly v. State of New York, 14 Misc 2d 314.)
The claimant made conflicting claims in regard to the best available use of the land appropriated by the State under Map No. 46, Parcel No. 179. The area covered by this map included the 630 feet lying between the Middle Mongaup River and old Route 17 which claimant contended was available for the extension of its ski slope, the area shown on a subdivision map offered in evidence, the commercial frontage claimed available on the easterly side of old Route 17 as so valued by claimant’s real estate expert and the area referred to as Lake Ophelia which claimant contended was a suitable location for a sewage disposal plant.
*219 In spite of the fact that the claimant has been connected to the sewer system of the Village of Liberty for over 20 years, claimant claimed damages herein for loss of a place to build a sewage plant and the use of the waters of the Middle Mongaup River in connection with such a plant, with the result that it claimed that the plant after the appropriation would have to be constructed in the vicinity of the Neversinlc Road at a great distance from its hotel and at a considerable cost. The evidence as to the possibility or probability of the Village of Liberty cutting off claimant’s use of its sewage system or claimant being forced to discontinue it at some future date due to some future prohibitive cost of the same, is too speculative. In addition, claimant can use the waters of the Middle Mongaup River shown on Map Nos. 227 and 228 for sewage purposes and no proof was made that claimant did not have available after the appropriation suitable level land in the vicinity thereof for such a plant.
While claimant claimed that by the appropriation made under Map No. 46, Parcel No. 179, it had been deprived of the 630 feet available to old Route 17 for expanding its ski slope into a champion one by building a bridge over the Middle Mongaup River, no ski expert testified on the trial that there was a need for such a champion slope or what land or exactly what was necessary for the construction of such a ski slope. While contending that it had plans to extend the ski slope, it appears that as early as 1948 plans had been made to use the same area for a subdivision development and as late as the trial herein, claimant asserted that this land was well suited for subdivision purposes. On all the evidence, we find that no need was shown for any other ski slope facilities than those that existed prior to the appropriation and are still available to the claimant after the appropriation.
On all the credible evidence, we find that prior to the appropriation, the best available use of the area shown on Map No. 46, Parcel No. 179, to a depth of 300 feet on the easterly side of Route 17 was for a commercial use and the remainder for a subdivision. By the appropriation, claimant was deprived of the residential lots to the rear of the 300-foot depth and bordering on the Middle Mongaup River.
While it is true that an appraisal of claimant’s property which is a famous resort hotel, represented something more than the usual appraisal of property, claimant’s proof as to damages was $829,815 and the State’s $74,000, a mere difference of $755,815 which represented something more than the usual high and low values as placed on property by the respective *220 experts in similar claims. True, many of the items of damages asserted by the claimant have been rejected, but even so there still remains an impossible divergence of expert testimony on values.
Claimant did own prior to the appropriation valuable land which was taken by the State. The land below the hotel property located on old Route 17 appears not to have been suitable for expansion of the hotel facilities as there was a considerable difference in grade between it and the claimant’s land on which the hotel was located. It could have been used, however, for a commercial development and a housing subdivision. The value of claimant’s entire property was enhanced by the ownership of the property appropriated and this fact would have been taken into consideration by a willing buyer. Claimant’s remaining property has sustained consequential damages as a result of the appropriation and the use to which the land appropriated was put. We reject the State’s assertion that the remaining property has not sustained consequential damages except in a nominal amount as testified to by the State’s expert.
We have marked the claimant’s and the State’s proposed findings of fact and conclusions of law and as so marked, together with this memorandum decision, constitute the decision of the court under section 440 of the Civil Practice Act.
We find the value of the temporary easements to be $848. At the time of the appropriation the fair and reasonable market value of claimant’s property was $5,000,000 and immediately after the appropriation was $4,794,000. By reason of the appropriation herein claimant has been damaged in the sum of $206,000 for land taken and consequential damages to the remainder for which it should have an award, with interest thereon as provided by law. It was stipulated on the trial that interest on the award should be from December 10, 1957.
The claimant is awarded the sum of $206,848, with interest thereon from December 10,1957 to the date of entry of judgment herein.