Paul C. Reuss, J.
On January 29, 1959 and for a considerable period prior thereto the claimant was the owner of a farm consisting of approximately 186 acres situated in the Town of Pompey, Onondaga County, New York. The property was located four or five miles from Manlius on a State highway referred to variously upon the trial as Route No. 20N, 20SY, 92 and as the Cazenovia-Manlius highway. We will hereinafter refer to such road as Route 20SY. Part of the claimant’s *715 premises also abutted East Pompey Hollow Road, a county highway which intersected Route 20SY. A portion of the claimant’s property lying on the northeast side of Route 20SY comprised approximately 25.38 acres and fronted for approximately 1,583 feet along the highway. This parcel was approximately 2,000 feet deep and had been planted with trees purchased by the claimant from the State of New York for reforestation purposes. The remaining portion of the property, comprising approximately 161 acres was located on the south side of Route 20SY. This portion of the claimant’s property also fronted on the Pompey Hollow Road and on the Oran-Delphi Road.
The farm property was not operated as a farm. Some of the acreage was in the soil bank and some was rented out for pasture. The property was improved by a large main house originally built as a “ drover’s ” tavern, a tenant house and certain other farm buildings. We have adopted requests for findings submitted by the claimant which adequately describe the improvements and will not repeat them herein. None of the improvements or buildings were taken in the appropriation which is the subject of this proceeding.
On January 29, 1959 the State of New York appropriated a parcel of the claimant’s property by filing a map and description of such property. Said map being entitled Cazenovia-Manlius Part II SH. 9025 Map No. 25, parcels 31 and 32, sheets 1 and 2, was filed in the office of the Clerk of Onondaga County upon the aforesaid date. Thereafter a revised appropriation map bearing the same map and parcel numbers was filed in the office of the Clerk of Onondaga County on December 8, 1960. The court adopts the revised map and we incorporate it herein by reference.
The original map designated parcel 31 on the north side of the road as an area containing 2.295 acres and parcel 32 on the south side of the road as an area containing 0.256 acres. The corrected map and description stated that the original map inadvertently showed highway right-of-way lines at locations where they did not exist and that the corrected map showed the highway boundary as now found. That 0.381 acres of the original parcel No. 31 was in the public highway and that 1.914 acres of parcel No. 31 was unincumbered as highway land, that 0.193 acres of the original parcel 32 was in the public highway and that 0.063 acres of parcel 32 was unincumbered as highway land. The reason for the filing of the corrected map was the State’s contention that Route 20SY was actually a six-rod road.
Upon the trial the State has proved that the Third Great Western Turnpike was laid out pursuant to chapter 84 of the Laws of 1803. Exhibit NN, a map of the State of New York, *716 William McAlpin, Oxford 1808 shows the Third Great Western Turnpike as the only highway then existing between Cazenovia and Manlius. The Third Great Western Turnpike running adjacent to the land now owned by the claimant was surveyed in October, 1804 and a copy of such survey was filed in the office of the Clerk of Oneida County. The courses, distances and angles of a plotting to scale of the terminus of the Great Western Turnpike based on the 1804 survey notes conform to the courses, distances and angles of Exhibit K, an official modern U. S. C. and G. S. topographical map of the same area. The plottings of the 1804 survey of the road conform to the present road as shown on the aerial maps, Exhibits Ml, M2 and M3. The plotting of the 1804 survey of the Third Great Western Turnpike also conforms to plots of the public highway in the same location made in 1911 and 1913. Upon the evidence we have concluded that since 1804 a highway has existed adjacent to the land owned by the claimant and that State highway Route No. 20ST in 1959 and 1960 followed the same general course in the vicinity of the claimant’s property as the Great Western Turnpike laid out in 1804 and that the center line of the said highway in 1959, 1960 is the same as existed in 1911, 1913 and in 1934 when the road was last reconstructed and that the same center line is substantially the center line of the highway as it existed between 1804 and 1911.
The State further contends that the highway in question was always and is now a six-rod road. The statute providing for the construction of the highway designated it as a six-rod road. While there is no proof that the highway was actually constructed to the full width of six rods, several deeds, Exhibits P & G, presented in evidence, dating from the first part of the 19th century conveying certain lands laying to the west of Cazenovia Lake, referred to the Turnpike as a six-rod road and excepted and reserved certain acreage from the deeds as being part of the Turnpike.
In the absence of evidence to the contrary the earliest known center line of the travelled highway is considered the center line of the highway right of way and when the original survey of such road runs in a single line such a line is presumed to be the center line of the highway. The failure of the State to open the highway to its full width does not operate to extinguish the rights of the public to the parts unopened. (Mullen v. State of New York, 17 Misc 2d 63.)
The claimant urges that there is no proof that the Turnpike Commissioners complied with all the requirements of chapter 84 of the Laws of 1803; specifically that it has not been demon *717 strated that the survey was filed in all the counties through which the road passed; that compensation was made and the amounts fixed as required by the statute; that the road v/as actually constructed and completed in accordance with the act and within five years of the date thereof. The evidence supports a finding that the road was actually constructed so that the principle, once a highway always a highway until the contrary is shown, is applicable herein. (Matter of Schiebel v. O’Brien, 230 N. Y. 277, 281.) Moreover, the law presumes that the Highway Commissioners performed their duties according to law (Harriman v. Howe, 78 Hun 280, 282, affd. 155 N. Y. 683). However, since it was established as a fact that Route 20SY is the old Third Great Western Turnpike as laid out pursuant to chapter 84 of the Laws of 1803, such highway was laid out at least under the color of statute and it must be deemed that the State acquired a right of way by prescription to a width of six rods as provided by the statute. (Schillawski v. State of New York, 9 N Y 2d 235.) Upon all the evidence we conclude that Route 20SY in the area in which it was adjacent to the claimant’s property was a six-rod road at the time of the appropriation. (Cf. Hinrichs v. State of New York, Claim No. 35084.)
Parcel 31, the larger of the two takings was located on the north side of the road and consisted of a long and fairly narrow strip of property and formerly comprised part of the 25.3-acre tract of the claimant’s land. This parcel was utilized to widen the existing highway by approximately 14 feet with a 10-foot shoulder. As part of the reconstruction a concrete gutter was constructed along the north edge of the road parallel with the highway.
As we have already noted, the 25-acre area north of the highway had been replanted for reforestation purposes. The parcel appropriated contained approximately 533 trees. The realty experts called by both parties stated that this particular tract was available for residential construction. The trees in the reforested area were not generally considered ornamental or shade trees. It would be impractical to remove them for sale. Moreover removal for sale was prohibited under the terms of their original purchase from the State. However, should the tract be developed for residential purposes the trees could be thinned and their presence would enhance the value of the plots particularly in the eyes of prospective buyers who preferred a residence in a sylvan setting. We have considered the trees in this area as such enhancements of the land. (Comstock Foods v. State of New York, 18 Misc 2d 519, affd. 11 A D 2d 753.) At the time that the road was reconstructed its original *718 grade remained unchanged. However, the terrain of parcel 31 ascended to the north, and in widening the road the State cut into the existing bank. This resulted in increasing the elevation of the abutting land above the highway, at all points except at the top of the hill at the east end, so that only at this point did access to the 25-acre parcel remain more or less the same. Direct access to the remainder of the parcel from the highway was rendered more difficult by virtue of the highway reconstruction.
Parcel 32 was located on the south side of the highway and comprised a relatively small area. As a result of the taking and construction certain trees within this general area were cut down. Approximately 21 of these were located in parcel 32. The remainder were within the highway right of way. These trees had formed a screen for the tenant house and shielded such house from the lights and traffic on the highway and also served as a screen from the highway for the main house. We have considered the loss of this screen of trees in assessing consequential damages to the claimant’s property lying to the south of the highway. (Potter v. State of New York, 11 N Y 2d 893.)
Prior to the appropriation, water was supplied to the claimant’s premises from a well located on the property of an adjacent owner. However, she had the right, by deed, to draw water therefrom. It was the claimant’s contention that the reconstruction of the highway interfered with underground springs so that the well is now not only undependable but also contaminated. Much testimony was introduced upon the trial with reference to the well. We have concluded that it was not, at least in recent years, a very good well and that with respect to purity, the water therefrom left much to be desired. Although the claimant testified she partook of the water from this well for many years without ill effect, we are inclined to believe her freedom from illness supports a finding that the claimant had a rugged constitution rather than pure water in her well. We have not given any consideration to the loss of the well for we find that the proof will not support a finding that any act of the State either contaminated the well or reduced the supply of water thereto.
There is evidence supporting a finding that as a result of the construction, in times of heavy rains water collected from the highway runs down onto and across Pompey Hollow Road and into claimant’s yard. We have not considered this item for there is no proof as to whether the condition is permanent and not susceptible of correction or merely an intermittent trespass. (West v. State of New York, 205 Misc. 492; La Rose v. State of *719 New York, 199 Misc. 317; Mitchell v. State of New York, 20 Misc 2d 374.)
With respect to the damages for the direct taking, there is not too much divergence between the expert witnesses. In fact one witness called by the claimant allowed $2,000 as the value of the land actually taken and one expert called by the State appraised the direct damages as $1,910. The main difference between the experts is with respect to the consequential damages. Of the experts called we regarded the State’s as more realistic and give greater weight to his values. Upon all the evidence and upon the view of the property we find that the value of the claimant’s property before the appropriation was $115,500, that the value of the claimant’s property after the appropriation was $105,000, that as a result of the appropriation of her property by the State of New York claimant has sustained damages in the amount of $10,500.
The claim herein was filed in the office of the Clerk of the Court of Claims on May 4, 1959 and served upon the AttorneyGreneral on May 1, 1959. The said claim has not been assigned. Claimant is entitled to an award against the State of New York in the sum of $10,500 with interest thereon from January 29, 1959 to the date of entry of judgment herein.