Henry W. Lengyel, J.
This is a claim for the appropriation of claimants’ land pursuant to section 30 of the Highway Law, as made applicable by title 1 of article 5 of the Public Authorities Law, which proceeding is described as Power Authority of the State of New York, Niagara Power Project, Onondaga County, Niagara-Adirondack Tie Line, Town of Cicero, Map No. OCI 899, Parcel No. 901. The aforesaid map and description was filed in the office of the County Clerk of Onondaga County on November 22, 1960. The claim was filed with the Clerk of the Court of Claims and the Attorney-General on May 26, 1961 and it has not been assigned or submitted to any other court or tribunal for audit or determination. We adopt the description of the appropriated property as shown on the map and description filed in the Onondaga County Clerk’s office, a copy of which is attached to the claim and same is incorporated herein by reference.
Claimants were the owners of the property by reason of a deed dated January 3, 1959 from Peter James De Metrio and Louise F. Mellone, grantors, to the claimants herein as grantees, *1062 recorded in. the Onondaga County Clerk’s office on February 13, 1959 in Liber 1939 of Deeds at page 346.
Before the appropriation the property consisted of 57.15± acres with 812.45± feet frontage on the west side of South Bay Lake Boad in the Town of Cicero in Onondaga County. The property was generally rectangular in shape with a south boundary line of 2,112± feet; a north boundary line of 1,897.50± feet; and, a rear boundary line of 1,419± feet. The land was generally at grade with Lake Shore Bay Boad with a slope downward in the rear (southwest area) where it was heavily wooded and wet. We find that the highest and best use of subject property both before and after the appropriation was strip development of the road frontage with an agricultural use of the rear lands and more particularly a wood-products use of the wooded and wet area.
Subject proceeding appropriated approximately 9.36± acres of claimants’ land in a trapezoidal shape, running generally across the southwest corner of said property. Said appropriation applied a permanent easement to subject property for power transmission line purposes as set forth in the filed appropriation map and the filed clarification map. There were no buildings in the appropriated area and the northwest corner of the easement was 300± feet west of the highway boundary.
Claimants base their damages on the theory that at the date of the appropriation the highest and best use of subject property was for residential subdivision. They relied in part on the fact that the prior owners, the parents of Gloria L. La Valle, had applied to the Town Board of Cicero and had received permission in 1954 to run an 8-inch water main to this property and also had had a survey of the property and a possible subdivision map prepared in 1954. Said water main was never constructed and the survey was never filed. We point out, as we have before, that there are thousands upon thousands of acres of land in up-State New York which are at grade with the highways and which would lend themselves to residential subdivision purposes if there were sufficient people available to occupy these proposed houses. The facets that would be considered by a developer, i.e., terrain, area, road frontage, zoning regulations, other facilities available in the general area of subject property, population trends, etc., are all susceptible of proof and most certainly are an integral part of such a claim. Of course, we must rely upon proof relative to the potentiality of real estate subdivision on the appropriation date. As was stated in Mitchell v. State of New York (20 Misc 2d 374, 378): “We cannot speculate; the rights of the parties are fixed as of the date of the appropriation. (Jackson v. State of New York, 213 N. Y. 34; Matter of Board *1063 of Water Supply, 277 N. Y. 452.) ” The testimony of claimants’ expert relative to the potentiality of this site for residential subdivision was not convincing. We viewed the site and the area for several miles in circumference around this site. It is our opinion that this area, almost five years after the appropriation, is generally in the state of highway strip development, and was so on the appropriation date. Those few subdivisions in existence are in the immediate area of population growth, i.e., the expansion of smaller communities or much closer to main arteries of travel than was subject property.
We further point out that when attempting to establish values for potential real estate subdivision that the rule is “ to treat the premises not as raw acreage nor as part of a completed development but as a potential subdivision site giving the acreage an increment in value because of that potential use.” (Hewitt v. State of New York, 18 A D 2d 1128.)
We do not agree with the State’s appraiser in his evaluation of the land covered by the appropriation. We find that 5± acres of said land were similar in character to other lands which were valued at $200 an acre and 4.36± acres of said land was of the wooded, wet type which was valued at $50 per acre. We find a 90% damage because of the permanent easement.
We find that the fair and reasonable market value of subject property before the taking was $17,315; that the fair and reasonable market value of subject property after the taking was $16,097; and that the amount by which claimants have been directly damaged is $1,096. There was no consequential damage.
We find that the use to which the Power Authority of the State of New York intends to put the property subject to the easement is transmission line uses of the type to which it is presently being put. If the Power Authority or the State of New York by some affirmative act terminates or interferes with these claimants or any successor owner’s rights in regard to the lands covered by said easement; or, puts said lands to a greater use than the use stated in the appropriation maps as clarified by the filed resolution of the Power Authority, that such shall be considered a de facto appropriation for which any owner might be entitled to compensation. (See Jafco Realty Corp. v. State of New York, 14 N Y 2d 556; Clark v. State of New York, 15 N Y 2d 990.)
Claimants are awarded the sum of $1,096 for all direct damages, with interest thereon from November 22, 1960 to May 22, 1961 and from May 26, 1961 to the date of entry of judgment herein.
The award to claimants herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, *1064 their tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.
The parties hereto shall have 10 days from the date of receipt of this decision in which to submit proposed findings of fact which, if submitted, shall be marked in accordance with this decision and the requirements of CiPLR 4213; if not submitted, they will be deemed waived.
Let judgment be entered accordingly.